## STEPHENS v. DORTCH

[147 N.C. App. 429 (2001)]

K. MARK STEPHENS AND WIFE, DENISE BUFF STEPHENS AND V. KEN PFAHL AND WIFE, SUSAN C. PFAHL, PLAINTIFFS v. MICHAEL J. DORTCH AND WIFE, ELYN SIKES DORTCH, DEFENDANTS

No. COA00-1430

(Filed 4 December 2001)

### 1. Easements— appurtenant—withdrawal of dedication—ingress and egress

The trial court did not err by granting partial summary judgment in favor of plaintiffs and concluding that defendants' filing of a declaration of withdrawal of dedication under N.C.G.S. § 136-96 did not operate to terminate plaintiffs' right to use an easement over a portion of defendants' property, because: (1) plaintiffs have an easement appurtenant since the agreement states the easement was dedicated to the grantees, their heirs, and assigns; (2) once an easement appurtenant is properly created, it runs with the land and is not personal to the landowner; (3) plaintiffs as owners of an easement appurtenant have rights to the easement above and beyond those of the general public; and (4) N.C.G.S. § 136-96 has no application and a street may not be withdrawn from dedication, over objection of one owning a lot or lots within the subdivision, if the street is necessary to afford convenient ingress or egress to such lot or lots.

### 2. Easements— right to ingress and egress—description of distance

The trial court did not err by determining that plaintiffs have a right to ingress and egress from their property to Belvedere Avenue by means of an easement over a portion of defendants' property even though defendant alleges the evidence shows that the easement falls short of the street by thirty feet, because: (1) the trial court's finding that the street existed as a specifically dedicated right of way that was staked in November 1930 and is in the same location today is supported by competent evidence; (2) although the description of distance in the agreement fell short of the street, the call in the agreement to a stake in the northerly edge of the street as now laid out serves as a call to a monument and prevails over the stated footage; and (3) the agreement intended the easement to extend to the street as it exists today for the purpose of providing ingress and egress to appurtenant lot owners.

**STEPHENS v. DORTCH**

[147 N.C. App. 429 (2001)]

Appeal by defendants from judgment entered 24 August 2000 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 October 2001.

*Kennedy Covington Lobdell & Hickman, LLP, by Roy H. Michaux, Jr., for plaintiff-appellees.*

*Ervin & Gates, by Winfred R. Ervin, Jr., for defendant-appellants.*

HUNTER, Judge.

Michael J. Dortch and Elyn Sikes Dortch ("defendants") appeal the entry of judgment in favor of K. Mark Stephens, Denise Buff Stephens, V. Ken Pfahl and Susan C. Pfahl ("plaintiffs"). We affirm.

On 20 November 1930, an easement was created among owners of various lots in the Club Acres subdivision of Charlotte. The easement was created by an agreement ("the agreement") wherein the owners of a portion of lots 28 and 30 of Club Acres dedicated to the public and to the owners of the remainder of lots 28 and 30, and lots 6, 25, 26, 29, and 31 of Club Acres, their heirs and assigns, a tract of land on the westerly edge of lot 28 to be used as a roadway. The easement was described in the agreement as beginning at the common point of lots 6, 28 and 30 of Club Acres, and extending "to a stake in the Northerly edge of Belvedere Avenue as now laid out."

On 4 October 1993, defendants acquired the westerly portion of lot 28 of Club Acres fronting on Belvedere Avenue and over which the 1930 easement passes. The defendants knew of the easement at the time they purchased the property. On 15 May 1996, defendants filed a Declaration of Withdrawal of Dedication with the Mecklenburg County Register of Deeds in which they sought to extinguish the easement over lot 28. Plaintiffs are owners of a portion of lots 6 and 28 of Club Acres. Plaintiffs maintain the easement is their only means of access to nearby Belvedere Avenue.

On 7 May 1999, plaintiffs filed this action seeking a declaration that defendants' Withdrawal of Dedication was void, and that they are entitled to use the easement described in the November 1930 agreement. Defendants filed a counterclaim, seeking a determination that plaintiffs are not entitled to use the easement, nor any other portion of defendants' property as a means of access to plaintiffs' property. Both parties filed motions for summary judgment.

On 11 August 2000, the trial court entered partial summary judgment in favor of plaintiffs. The trial court found: (1) the easement established by the agreement is an easement appurtenant to those properties for which the easement was created, including lots 6, 25, and 28 of Club Acres in which plaintiffs have an interest; and (2) the easement area has never been accepted for maintenance by a governmental entity, has never been used by the general public, and therefore, the Withdrawal of Dedication was effective as to members of the general public. The trial court concluded plaintiffs have an easement appurtenant for ingress and egress to their property, and that the easement is only available to and enforceable by the landowners of lots 6, 25, and 28 of Club Acres.

The trial court further concluded the easement extends from the common corner of all three lots to Belvedere Avenue as laid out at the time the agreement was entered. The court determined there remained an issue of material fact as to whether Belvedere Avenue is in the same location today as it was when the agreement was entered, and whether the easement extends to Belvedere Avenue as it exists· today.

On 14 August 2000, the trial court conducted a bench trial on the remaining issue of the easement's location. The trial court found that when plotted upon the ground, the easement as described in the agreement did not extend from the common boundary of lots 6, 28, and 30 all the way to the northern margin of Belvedere Avenue. The trial court determined the easement fell short of Belvedere Avenue by thirty feet. The trial court determined, however, that Belvedere Avenue exists today in the same location as it existed in November 1930, and that the call to "a stake in the Northerly edge of Belvedere Avenue as now laid out" was a call to a monument that governs over the distance stated in the agreement. The trial court concluded the easement extends to Belvedere Avenue as it exists today, and that it provides plaintiffs a means of ingress and egress to and from Belvedere Avenue. Defendants appeal.

Defendants argue: (1) the trial court erred in concluding the Withdrawal of Dedication did not terminate plaintiffs' right to use the easement; and (2) the trial court erred in determining plaintiffs have a right to ingress and egress from their property to Belvedere Avenue by means of the easement.

I.

**[1]** In their first argument, defendants contend the trial court erred in determining their Withdrawal of Dedication did not operate to terminate plaintiffs' right to use the easement. The trial court concluded the Withdrawal of Dedication was not effective as to plaintiffs in its order for partial summary judgment. A review of the granting of summary judgment involves a two-part analysis of whether "(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664 (2000), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— (No. 01-69 filed 9 October 2001).

Defendants argue the trial court's conclusion that the Withdrawal of Dedication did not terminate plaintiffs' easement is inconsistent with the plain language of N.C. Gen. Stat. § 136-96 (1999). That statute provides that when any piece of land dedicated to public use as a roadway has not been opened for and used by the public within fifteen years from its dedication, it shall be presumed to be abandoned by the public for the purpose for which it was dedicated. N.C. Gen. Stat. § 136-96. The statute states that upon the proper filing of Withdrawal of Dedication, "no person shall have any right, or cause of action thereafter, to enforce any public or private easement therein." N.C. Gen. Stat. § 136-96. Defendants argue this language operates to terminate any rights plaintiffs had in the easement area. We disagree.

The trial court found that plaintiffs' easement is appurtenant to lots 6, 25, and 28 of Club Acres, in which they have an interest as landowners. An easement appurtenant is " 'an easement created for the purpose of benefitting particular land. This easement attaches to, passes with and is an incident of ownership of the particular land.' " *Harry v. Crescent Resources, Inc.*, 136 N.C. App. 71, 74, 523 S.E.2d 118, 120 (1999) (citation omitted). Although defendants do not assign error to this particular finding of the trial court, we note the evidence supports the trial court's determination that plaintiffs have an easement appurtenant.

In *Brown v. Weaver-Rogers Assoc.*, 131 N.C. App. 120, 505 S.E.2d 322 (1998), *disc. review denied*, 350 N.C. 92, 532 S.E.2d 523 (1999), this Court determined that a grant of an easement is reasonably interpreted to be an easement appurtenant where the grant includes such

language as " 'his heirs and assigns.' " *Id.* at 123, 505 S.E.2d at 325. We noted the use of such words "indicates an intent that the grant was not personal to [the grantee], but would extend beyond the life of [the grantee] and would run with the land." *Id.* We stated that more significantly, the grant did not mention the term " '. . . "in gross[,]" ' " nor did it ". . . 'qualify the grantee's rights by the use of such terms as "personally" or "in person." ' " *Id.* at 123-24, 505 S.E.2d at 325 (citation omitted).

Likewise, the agreement at issue here states the easement was dedicated to the grantees, "their heirs and assigns." As in *Brown*, the agreement in this case does not include the term "in gross," nor does it contain language such as "personally," "in person," or any other language suggesting the grantors intended to limit the easement rights to the named grantees. A reasonable interpretation of the agreement supports the trial court's finding that the easement is appurtenant to plaintiffs' land.

"Once an easement appurtenant is properly created, it runs with the land and is not personal to the landowner." *Id.* at 123, 505 S.E.2d at 324. "An appurtenant easement is an incorporeal right attached to the land and incapable of existence separate and apart from the particular land to which it is annexed." *Yount v. Lowe,* 288 N.C. 90, 97, 215 S.E.2d 563, 567 (1975). Such an easement "adheres to the land" and "can be conveyed only by conveying the land involved." *Frost v. Robinson,* 76 N.C. App. 399, 400, 333 S.E.2d 319, 320 (1985).

In *Butler Drive Property Owners Assn. v. Edwards,* 109 N.C. App. 580, 427 S.E.2d 879 (1993), the petitioners filed a declaratory judgment action seeking a determination that the respondents had no right to ingress and egress over an easement which abutted respondents' property because the easement had never been dedicated to the general public. This Court drew a distinction between the issue of dedication to the general public and the issue of an easement appurtenant. We stated:

> [P]etitioners have failed to address the fact that respondents are not merely members of the 'general public' or purchasers of a lot outside of the subdivision possessing no interest in [the easement area]. On the contrary, respondents are owners of a parcel of land with an appurtenant easement that gives them the right of ingress and egress over [the easement area].

*Id.* at 584, 427 S.E.2d at 881. Likewise, in the instant case, plaintiffs are owners of an easement appurtenant, and thus have rights to the easement above and beyond those of the general public.

Further, our Supreme Court has specifically held that N.C. Gen. Stat. § 136-96 "has no application and a street may not be withdrawn from dedication, over objection of one owning a lot or lots within the subdivision, if the street 'be necessary to afford convenient ingress or egress to' such lot or lots." *Janicki v. Lorek*, 255 N.C. 53, 59, 120 S.E.2d 413, 418 (1961) (citations omitted). When it is established that a lot in a subdivision abuts the street sought to be withdrawn,

> it will be conclusively presumed that the street is 'necessary to afford convenient ingress or egress' to or from the lot, and, in the absence of consent by the lot owner to the withdrawal, G.S. § 136-96 has no application and the dedication may not be withdrawn irrespective of lapse of time or whether or not the street has been opened and used.

*Id.* at 60, 120 S.E.2d at 418.

Defendants have not argued on appeal that plaintiffs do not need the easement for convenient ingress and egress to their property; therefore, under *Janicki*, the conclusive presumption is that the easement is necessary to provide convenient ingress and egress for plaintiffs' property, and any withdrawal under N.C. Gen. Stat. § 136-96 has no application to plaintiffs' easement appurtenant. The trial court correctly determined under N.C. Gen. Stat. § 136-96 that defendants' Withdrawal of Dedication did not extinguish plaintiffs' rights in the appurtenant easement as owners of the adjoining property. This argument is therefore overruled.[1]

II.

[2] In their next argument, defendants maintain the trial court erred in determining plaintiffs have a right to ingress and egress over the easement to and from Belvedere Avenue. Specifically, they argue the evidence shows the easement falls short of Belvedere Avenue by

---

1. Neither party assigns error to the trial court's determination that defendants' Withdrawal of Dedication was effective as to the general public; however, we note that under *Janicki*, where an appurtenant landowner needing the easement for convenient ingress and egress objects to the withdrawal, as was the case here, N.C. Gen. Stat. § 136-96 "*has no application and a street may not be withdrawn from dedica- . tion*" absent the consent of the landowner. *Janicki*, 255 N.C. at 59, 120 S.E.2d at 418 (emphasis added).

thirty feet, and that the trial court erred in concluding the easement extends to Belvedere Avenue as it exists today. The trial court determined the exact location of the easement during the bench trial which followed the entry of partial summary judgment for plaintiffs. " 'It is well established that where the trial court sits without a jury, the court's findings of fact are conclusive if supported by competent evidence, even though other evidence might sustain contrary findings.' " *Goodson v. Goodson*, 145 N.C. App 356, 361, 551 S.E.2d 200, 204 (2001) (citation omitted).

The trial court's pertinent findings of fact are:

3. The description of the area set aside in the Easement Agreement . . . called for a beginning point at the common boundary of Blocks 6, 28 and 30 of Club Acres and ran from the beginning point to a stake in Highland Road. The description then extended from the stake in Highland Road two courses and distances "to a stake in the northerly edge of Belvedere Avenue as now laid out."

4. When plotted upon the ground, the Easement Area . . . does not extend from the common boundary of Blocks 6, 28, and 30 of Club Acres to the northern margin of Belvedere Avenue as it exists today; the Easement Area falls approximately 30 feet short of Belvedere Avenue.

5. Belvedere Avenue was dedicated prior to November 20, 1930, by a map of Midwood Subdivision dated 1914 and recorded in Book 230 at pages 96 and 97, Mecklenburg County Registry and a Map of St. Andrews Place dated August 1926 recorded in Map Book 3 at page 343, Mecklenburg County Registry.

6. The description to Lots 1 and 2 of Midwood contained in a deed dated May 30, 1930 and recorded in Book 777 at page 417, Mecklenburg County Registry calls for "an iron stake in the northerly margin of Belvedere Avenue, said point being the southeastern corner of Lot No. 1 as shown on the Map of Midwood . . . ."

7. The eastern boundary of Lot No. 1 of Midwood is the western boundary of the defendant's [sic] property and includes the western boundary of the Easement Area.

8. The Court cannot determine if Belvedere Avenue was actually constructed or paved in November of 1930, but based upon

**STEPHENS v. DORTCH**

[147 N.C. App. 429 (2001)]

the other exhibits and testimony presented, Belvedere Avenue existed as a specifically dedicated right-of-way that had been staked in November of 1930 and it is still in the same location today.

We hold these findings conclusive on appeal, as they are supported by competent evidence. Findings of fact numbers three and four are undisputed. The agreement clearly states the easement was intended to run "to a stake in the Northerly edge of Belvedere Avenue as now laid out." The trial court's finding that Belvedere Avenue was dedicated prior to the agreement is also supported by the evidence. A 1914 map of neighboring Midwood Subdivision clearly locates Belvedere Avenue. The description of Belvedere Avenue in finding of fact number six is supported by the 30 May 1930 deed to Midwood lots one and two contained in the record. Maps in the record also support the finding that the eastern boundary of lot number one in Midwood is also the western boundary of defendants' property, or lot 28.

Most significantly, the court's finding that Belvedere Avenue existed as a specifically dedicated right of way that was staked in November 1930 and is in the same location today is supported by competent evidence. The agreement itself states that the easement area, "a road opened down the Westerly edge of Lot 28," was in use at the time of the dedication, and the 30 May 1930 recorded deed to Midwood lot one contains a description of the northerly margin of Belvedere Avenue. Moreover, Clifford Clark Nielson ("Nielson"), who testified as an expert in land surveying, opined that Belvedere Avenue today is in the same location as it was in November 1930.

Nielson testified that a comparison of the 1926 map of St. Andrew's Place and a recent tax map shows Belvedere Avenue is now in the same location as it was in 1926. He stated it was his opinion that Belvedere Avenue was never moved from the location depicted on the maps dated 1914 and 1926 referenced in the court's findings of fact. Nielson testified Belvedere Avenue has not been widened from its original sixty-foot right of way that was platted in 1926. He further testified that although Belvedere Avenue may not have been paved at the time of the agreement, it had been platted, and therefore existed as a right of way which was at some point paved in the same location as Belvedere Avenue today.

We hold this evidence to be competent evidence supporting the trial court's findings of fact, particularly the finding that Belvedere

STEPHENS v. DORTCH

[147 N.C. App. 429 (2001)]

Avenue existed as a specifically dedicated right of way in 1930 and is still in the same location today. Although there may be evidence in the record to the contrary, where the trial court sits as a finder of fact, its findings must simply be supported by competent evidence. *See Goodson*, 145 N.C. App. at 361, 551 S.E.2d at 204.

The trial court concluded that although the description of distance in the agreement fell short of Belvedere Avenue, the call in the agreement to "a stake in the Northerly edge of Belvedere Avenue as now laid out" serves as a call to a monument and prevails over the stated footage. The trial court further concluded the agreement intended the easement to extend to Belvedere Avenue as it exists today for the purpose of providing ingress and egress to appurtenant lot owners.

Defendants argue a stake is not sufficiently permanent to serve as a monument. However, the trial court found the call to a monument was a stake "in the Northerly edge of Belvedere Avenue," which the court found to be in the same location today as at the time of the agreement in 1930. Thus, Belvedere Avenue, which has remained the same, may serve as a monument that governs over the distances described in the agreement. " 'Where the calls are inconsistent, the general rule is that calls to natural objects control courses and distances. A call to a wall, or to another's line, if known or established, is a call to a monument within the meaning of this rule, as is a call to a highway.' " *Highway Comm. v. Gamble*, 9 N.C. App. 618, 623-24, 177 S.E.2d 434, 438 (1970) (citation omitted) (emphasis omitted).

We further noted in *Gamble* that our Supreme Court has held that a roadway is "of such permanent character as to become a monument of boundary." *Id.* at 624, 177 S.E.2d at 438 (citing *Brown v. Hodges*, 232 N.C. 537, 61 S.E.2d 603 (1950), *Franklin v. Faulkner*, 248 N.C. 656, 104 S.E.2d 841 (1958)). An artificial monument of boundary, such as a roadway, "in case of conflict, is considered the superior call in reference to course and distance, and controls the same when it is properly identified and placed and called for in the deed as a corner of the land." *Nelson v. Lineker*, 172 N.C. 330, 333, 90 S.E. 251, 252 (1916).

The call in the agreement to the northerly edge of Belvedere Avenue governs over course and distance. We have previously held the trial court's finding that Belvedere Avenue exists today as it did in 1930 to be supported by competent evidence. Thus, Belvedere Avenue is a sufficiently permanent monument upon which the court could

base its conclusion that the easement must extend to that roadway as it exists today. We note that with respect to the location of an easement, " '[t]he law endeavors to give effect to the intention of the parties, whenever it can be done consistently with rational construction.' " *Parrish v. Hayworth*, 138 N.C. App. 637, 642, 532 S.E.2d 202, 206 (2000) (citation omitted), *disc. review denied*, 353 N.C. 379, 547 S.E.2d 15 (2001). We agree with the trial court that the agreement intended to provide the owners of the appurtenant lots with convenient ingress and egress for Belvedere Avenue. Having determined the trial court's findings are supported by competent evidence, and its findings support its conclusions of law, we affirm the entry of judgment for plaintiffs.

Affirmed.

Judges GREENE and THOMAS concur.