BAKER v. MOOREFIELD

[154 N.C. App. 134 (2002)]

———

H. WADE BAKER AND WIFE, LOLA W. BAKER; JACOB L. BAKER (WIDOWER); AND JACOB L. WHITAKER, EXECUTOR OF THE ESTATE OF GOLDEN McCLELLAN BAKER AND EXECUTOR OF THE ESTATE OF ETHEL PAULINE WHITAKER BAKER, PETITIONERS V. CLYDE GRAY MOOREFIELD AND WIFE, DONNA W. MOOREFIELD, RESPONDENTS

No. COA01-1594

(Filed 19 November 2002)

**1. Deeds— ambiguity in description—sufficiency of evidence**

There was competent evidence to support the trial court's finding of ambiguity in a deed where there was testimony from two professional surveyors that the terms in the original deed were inconsistent when applied to the contested boundary.

**2. Deeds— conflict in description—monument controls**

The trial court correctly used the brick wall of a store building as a monument in an action to establish a common boundary where the course and distance description in the deed was inconsistent with the monument. Where there is a conflict between course and distance and a fixed monument, the call for the monument will control.

Judge GREENE dissenting.

Appeal by petitioners from judgment entered 20 September 2001 by Judge Clarence E. Horton, Jr., in Superior Court, Stokes County. Heard in the Court of Appeals 17 September 2002.

BAKER v. MOOREFIELD

[154 N.C. App. 134 (2002)]

*Hough & Rabil, PA, by David B. Hough, for petitioners-appellants.*

*Stover and Bennett, by Michael R. Bennett, for respondents-appellees.*

WYNN, Judge.

Wade and Lola Baker appeal the Superior Court's judgment establishing a common boundary line between the Bakers' property and adjacent property owned by Clyde and Donna Moorefield. The Bakers present one issue on appeal: Did the trial court err by finding the recorded deed ambiguous and using a monument, instead of course and distance, to establish the common boundary? After a careful review of the record, we conclude the trial court had competent evidence to find ambiguity in the deed. Moreover, our Supreme Court has consistently held that when "there is a conflict between course and distance and a fixed monument, the call for the monument will control." *Cutts v. Casey*, 271 N.C. 165, 170, 155 S.E.2d 519, 522 (1967). Accordingly, we affirm the judgment of the Superior Court, Stokes County.

The facts of this case tend to show that in 1953, the Moorefields and Bakers entered into a land conveyance contract and used the following legal description to describe the property conveyed:

BEGINNING at an iron stake in the Golden Baker and C.D. Slate line, at a point 54.8 feet, South 79 degrees 51 minutes East of Golden Baker's and C.D. Slate's corner in C.T. McGee's line, *and runs thence South 7-1/2 degrees West, said line being parallel to the brick wall of the store building;* 100 feet to a corner in line of U.S. Highway 52; thence South 79 degrees 57 minutes East 140 feet to a point in the line U.S. Highway 52, thence parallel with the first line, running North 7-1/2 degrees East 150 feet to an iron stake, Golden Baker's corner and Mrs. C.D. Slate's line; thence with her line North 79 degrees 57 minutes West 140 feet to the BEGINNING.

The present controversy arises from the placement of a common boundary line which the deed describes as running "South 7-1/2 degrees West" and "parallel to the brick wall of the store building." In 1986, the Moorefields tore down the brick wall and store building, and constructed a new structure on the property. In December 1997, the Bakers filed a Petition to Establish Boundaries in Superior Court,

Stokes County. The Bakers alleged that the Moorefield's new structure encroached on the 7 ½ degree boundary arch. In response, the Moorefields alleged that the new structure was parallel to the brick wall of the old store building.

In August 2001, the case was tried without a jury before Superior Court Judge Clarence W. Horton who made the following contested Findings of Fact:

> 8. Location of the first line, which proceeds generally South . . . is the primary focus of the dispute between the parties. The description of the first line . . . describes a course South 7 ½ degrees West, running parallel to the brick wall of the Store Building . . . . Although the old Store Building has now been removed . . . its exact location was plotted . . . . [However a] course of 7 ½ degrees West is not parallel with the Store Building, and does not accurately represent the common boundary line . . . as shown by . . . the surveys.

> 11. [T]he Store Building was a monument, and the description of the line as being parallel to the Store Building would take precedence over the description of the same line as being South 7 ½ degrees.

Based on these findings of fact, the trial court concluded the "true boundary lines of the [Bakers' Property]" did not run 7 ½ degrees South, but rather, were parallel to the old store building and brick wall. Accordingly, the trial court affirmed the status quo, and held that the Moorefields were not encroaching on the Baker's property. The Bakers' appeal this judgment.

In a petition to establish boundaries, "where the location of the boundary line . . . is admitted, or evidence is not conflicting, . . . the location of the line [is] a question of law for the court." *Young v. Young*, 76 N.C. App. 93, 95, 331 S.E.2d 769, 770 (1985). However, "where the language is *ambiguous* so that the effect of the instrument must be determined by resort to extrinsic evidence . . . the question of the parties' intention becomes one of fact." *Runyon v. Paley*, 331 N.C. 293, 305, 416 S.E.2d 177, 186 (1992) (emphasis in original). "Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. review denied*, 354 N.C. 365, 556 S.E.2d 577 (2001) (citations omitted).

**[1]** First, the Bakers contend the trial court erred "in determining the placement of a boundary line" by "inappropriately isolating a single phrase," and giving the phrase too much weight. Essentially, the Bakers argue the trial court erroneously concluded that the deed was ambiguous. We disagree.

The deed specifically provides that the boundary line running "South 7-1/2 degrees West" is "parallel to the brick wall of the store building." Craig Sizemore, a surveyor hired by the Moorefields' in 1986, before the present controversy arose, testified that a line drawn 7 ½ degrees South was not parallel with the location of the brick wall.[1] Marvin Cavenaugh, a surveyor appointed by the Clerk of Court for Superior Court of Stokes County, also testified that a 7 ½ degree line was not "exactly parallel" with the brick wall.[2] Thus, the court heard testimony from two professional surveyors that the terms in

---

1. According to the dissent, this testimony should be disregarded because Sizemore did not survey the call in the deed. It is unclear whether the dissent is questioning his credibility or competence. In either case, however, it is not within the province of this Court to re-weigh credibility evidence on appeal or to raise error where no error is assigned. In the first instance, the dissent might be arguing that Sizemore is not "credible" because he did not survey the call. However, our Supreme Court has made it eminently clear that: "Questions of credibility and the weight to be accorded the evidence remain in the province of the finder of facts." *Scott v. Scott,* 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994). In the second instance, the dissent might be arguing that Sizemore is not "competent" to testify on the relationship between the call and the brick wall because he did not survey the call. The Baker's, however, did not raise this objection at trial; The trial court did not have an opportunity to hear or rule on this objection; and the Baker's did not assign this as error. Accordingly, under our rules of appellate procedure, the competence of Sizemore was not properly preserved and is not before this Court. N.C. R. App. P. 10(a) (2002).

2. In analyzing Cavenaugh's testimony and reaching a conclusion, the dissent states that "a map pursuant to a survey that closes by following the deed description and accepting the common boundary line as being close to but 'not exactly parallel' to the store building is a more accurate reflection of the parties' intentions . . ." Essentially, the dissent reasons that interpreting the word "parallel" literally is "repugnant" to the rest of the deed. The dissent assumes, in opposition to the trial court, that the word "parallel" as opposed to the "7 ½ degree call" is the repugnant aspect of the deed. In support of this proposition, the dissent notes that "Cavenaugh expressed doubt" as to whether the original surveyors "actually went out and located the two corners of the building and created a parallel line." This doubt, however, is not a sufficient basis to reverse the factual findings of the trial court for three reasons. First, Cavenaugh was not at the original survey. Therefore, his doubt is mere speculation. Second, whether or not the surveyors did their jobs correctly does not have the slightest of relevance in determining the "original intent" of the parties. In fact, the original parties to the deed certainly had a greater understanding of the term "parallel" than they did of a "7 ½ degree" call. Third, even assuming Cavenaugh's doubts are correct, i.e. the original surveyors did not measure a parallel line as instructed and, therefore, created an ambiguity in the deed, our law compels the trial court to have monuments control over course and distances.

the original deed were inconsistent when applied to the contested boundary. Accordingly, the trial court's finding of ambiguity in the deed is binding on appeal, because there was competent evidence to support the trial court's determination that a "course of 7 ½ degrees West is not parallel with the Store Building, and does not accurately represent the common boundary line." Therefore, this assignment of error is without merit.

[2] Second, the Bakers contend the trial court erred by using the brick wall of the store building to establish the common boundary instead of using the course and distance description in the deed. We disagree.

In North Carolina, it is well established that: "[w]here there is a conflict between course and distance and a fixed monument, the call for the monument will control." *Cutts v. Casey*, 271 N.C. 165, 170, 155 S.E.2d 519, 522 (1967); *North Carolina State Highway Commission v. Gamble*, 9 N.C. App. 618, 623-24, 177 S.E.2d 434, 438 (1970); *see also Stephens v. Dortch*, 148 N.C. App. 509, 517, 558 S.E.2d 889, 894 (2002) ("[T]he general rule is that calls to natural objects control courses and distances."). Moreover, "a building is frequently regarded as a monument of boundary sufficient . . . to control course and distance." *Millard v. Smathers*, 175 N.C. 61, 65, 94 S.E. 1045, 1047 (1917); *see also Stephens*, 148 N.C. App. at 517, 558 S.E.2d at 894 ("A call to a wall . . . if known or established, is a call to a monument."); *Gamble*, 9 N.C. App. at 623-24, 177 S.E.2d at 438.

Here, as previously noted, the terms in the original deed are inconsistent when applied to the contested boundary. Moreover, the conflict involves a call to course and distance that is inconsistent with a known monument. Accordingly, the trial court correctly applied North Carolina law by resolving the controversy in favor of the monument. Therefore, this assignment of error is without merit.

Affirmed.

Judge BIGGS concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting.

As I disagree with the majority that, in order to determine the common boundary line between the parties in this case, the call in the deed to a monument prevails over a call to a course, I dissent.

Our Supreme Court has held: " 'In the construction of deeds, words are not the principal thing, . . . and . . . when there are any words in a deed that appear repugnant to the other parts of it, and to the general intention of the parties, they will be rejected.' " *Lumber Co. v. Lumber Co.*, 169 N.C. 80, 93, 85 S.E. 438, 446 (1915) (citation omitted). As a general rule of hierarchy, " 'monuments, natural or artificial, referred to in a deed, control its construction, rather than courses and distances; but this rule is not inflexible. It yields whenever, taking all the particulars of the deed together, it would be absurd to apply it.' " *Lumber Co.*, 169 N.C. at 94, 85 S.E. at 446 (quoting *White v. Luning*, 93 U.S. 514, 524, 23 L. Ed. 938, 939-40 (1876)).

While Craig Sizemore (Sizemore), the Moorefields' surveyor, testified a line drawn "South 7-1/2 degrees West" as required by the deed "would have gone up either close to or through the old store building, and definitely not parallel with it," this testimony must be disregarded as Sizemore never surveyed the call in the deed. In fact, Sizemore never considered the deed in surveying the property. Instead, he located iron stakes that were not referenced in the deed but purported by the Moorefields to establish the property boundaries and based his deductions regarding the common boundary line between the Moorefields and the Bakers on the location of these stakes.

Later in the hearing, the parties also stipulated that, contrary to Sizemore's testimony, the line would not have gone through the store building. This stipulation was based on a projection by Marvin Cavenaugh (Cavenaugh), the court-appointed surveyor, who explained the line would not even get close to the building, although it would be "not exactly parallel." In addition, Cavenaugh expressed doubt "[w]hether or not the day [the property] was surveyed [for purposes of the deed the original surveyors] actually went out and located the two corners of the building and created a line parallel."

Cavenaugh had prepared several maps with respect to the property in question: (1) a map following the calls in the deed (the deed map),[3] (2) a map (the stake map) reflecting the iron stakes found on

3. In surveying the property following the calls in the deed, Cavenaugh did not consider the call in the deed to the "line being parallel to the brick wall of the store building" because the building had been torn down several years before.

the property,[4] (3) a map setting out the Bakers' contentions regarding the boundaries, and (4) a map outlining the Moorefields' contentions.[5] With respect to the deed map, Cavenaugh testified "the deed closed and . . . had a mathematical closure that was proper and acceptable." Comparing the deed map to the stake map, Cavenaugh concluded that "beyond [the northern boundary line of the property] there[] [was] not a whole lot of semblance" between the two maps.

It thus appears that a map based on a survey that closes by following the deed description and accepting the common boundary line as being close to but "not exactly parallel" to the store building is a more accurate reflection of the parties' intentions than a map based on movable iron stakes that hardly has any semblance to the deed description. Upholding the general rule of hierarchy among calls in a deed by taking the word "parallel" literally instead of accepting it as a general reference for the direction of the intended line would make it repugnant to the other parts of the deed and lead to an absurd result. *See Lumber Co.*, 169 N.C. at 93, 85 S.E. at 446. Accordingly, I would agree with the Bakers that the trial court "inappropriately isolat[ed] a single phrase" in the deed and that its judgment must therefore be reversed and remanded for determination of the common boundary line between the parties pursuant to the call in the deed to a course of "South 7-1/2 degrees West."

─────────────

4. This survey was introduced into evidence as Exhibit H and was later relied on by the trial court in entering its judgment.

5. In comparing the contentions of the Bakers with those of the Moorefields, Cavenaugh concluded the Bakers' contentions were "more consistent with the recorded document," i.e. the deed.