W. L. SHERROD v. M. J. BATTLE ET AL.

(Filed 15 March, 1911.)

1. **Deeds and Conveyances—Boundaries—Questions for Court—Questions for Jury.**

    It is a question of law for the court to determine from the face of a deed what are the boundaries therein called for, to be located by the jury when the facts are disputed.

2. **Deeds and Conveyances—Interpretation—Intent—Natural Boundaries—Course and Distance.**

    There being less likelihood that the parties to a deed have erred as to the location of natural objects therein called for, the court will effectuate their intention by allowing natural objects, such as rivers, well-defined streams, islands, trees, or a ditch, which are called for, to control course and distance.

3. **Deeds and Conveyances—Calls—Boundaries—Questions for Jury—Instructions.**

    Where there is ambiguity in the calls of a deed the jury should be instructed by the judge upon the established rules of law applicable, so that they may be aided in their finding upon the evidence as to the true location of the calls; and it is none the less the duty of the judge to so instruct the jury as to what is a boundary, and where it is, when the facts are undisputed and the parties concede that its location is to be fixed by a legal construction of the deed.

4. **Deeds and Conveyances—Boundaries—Ditches—Definition.**

    The words "ditch" or "drain" have no technical or exact meaning; either may indicate a hollow or open space in the ground,

natural or artificial, where water is collected or passes off; and such, if sufficiently defined, may bound land as other natural objects.

5. **Deeds and Conveyances—Boundaries—Ditches—Evidence, Conflicting—Lines—General Direction—Course.**

A disputed divisional line between adjoining lands of the parties was made to depend upon a description in a conveyance, as follows: "Beginning at the head of a ditch on the E. and T. road, running with said ditch in an eastern direction to a branch, thence with said branch to the edge of G. Swamp, thence due east to the canal," etc. The beginning point and the line from there to the second call in the deed were not disputed, but there was evidence tending to show a continuation of the ditch in two directions; that one was a lead ditch continuous from the beginning corner, with the other emptying into it, the latter extending in an eastern direction, and that, by following either, the calls in the deed might be met: *Held*, (1) it was for the jury to say which of these ditches was called for in the deed, and the one so found would control course and distance; (2) the call for the line, "running with the ditch in an eastern direction," was not controlling so as to exclude a line running with one of the ditches in a general eastward direction, because it varied its course, sometimes east, northeast, and even north, in favor of the other running more nearly in an eastern direction.

6. **Deeds and Conveyances—Intent of Grantor—Declarations—Parol Evidence—Reformation—Mutual Mistake.**

The grantor's declaration as to his intent cannot affect the location of lines expressed in his deed where the reformation of the deed on the ground of mutual mistake is not sought in the action.

7. **Deeds and Conveyances—Description—Number of Acres—Aider.**

For instances in which the number of acres mentioned in the deed to lands may aid the description therein, *Whitaker v. Cover*, 140 N. C., 280, cited and approved.

APPEAL by defendant from *Peebles, J.,* at October Term, 1910, of EDGECOMBE.

The case is stated in the opinion of the Court by *Mr. Justice Walker.*

*F. S. Spruill for plaintiff.*
*Jacob Battle and Claude Kitchin for defendant.*

SHERROD *v.* BATTLE.

WALKER, J. This action was brought to recover the posses-
sion of a tract of land and damages for the unlawful detention
of and injury to the same. The plaintiff's right to the relief
demanded was conceded to depend upon the correct location of
a call in the deeds from M. J. Battle to Mary A. Powell and
from Mary A. Powell to M. J. Battle, guardian. The true
boundary line between adjoining tracts is the question in con-
troversy. The call is as follows: Beginning at the head of a
ditch on the Enfield and Tarboro road, about equidistant from
the buildings on the land of J. H. Cutchin and (those on) the
Nevill place, running with said ditch in an eastern direction
to a branch, thence with said branch to the edge of Griffin
Swamp, thence due east to the canal, and thence by various
calls to the beginning.

The plaintiffs contend that the line should be run from the
first station with the ditch, *in an easterly course,* to the branch,
and thence with the other calls to the edge of the swamp (indi-
cated on the map as lines 1, 2, 20, 19, 18, 17, and 16), and if
this is done, it is admitted that they must succeed and the de-
fendants must fail.

The defendants, on the contrary, insist that the line should
begin at the ditch (figure 1), which is admitted to be the true
beginning corner, and that the call for the ditch means what
they say is the "lead ditch," and that, therefore, the other calls
should follow the course of that ditch until it empties into a
branch, which is considerably north of the branch which the
plaintiffs say is the one mentioned in the deeds.

· The judge charged with the plaintiffs, and told the jury that
in locating the line they must follow the course of the lower
ditch, which begins at the figure 1 and leads in an easterly di-
rection and almost due east, while to follow the other ditch
would describe a line running east about 3½ chains, thence N.
18 E. 5 chains, thence N. 87 E. 5.80 chains, thence N. 78 E.
9 chains, thence N. W., thence by several zigzag lines vary-
ing in course from due north to northwest and thence due
east to the upper edge of the swamp.

We do not agree altogether with his Honor as to the law of
the case. The question as to what are the boundaries of land

is one of law, but as to where they are is for the jury to determine. *Jones v. Bunker,* 83 N. C., 324; *Gudger v. White,* 141 N. C., 519. Natural or physical monuments are generally preferred, in questions of boundary, to other less certain objects called for in a deed, because they are fixed and more easily identified and there is less apt to be any mistake in regard to them. But the object of the law in settling disputes is certainty and the effectuation of the intention of the parties, as gathered from the deed or other instrument. Natural objects, such as a river or other well-defined stream, or an island or tree, or even a ditch, will control a call for course and distance as being the more reliable of the two calls. Unless an actual survey is made, the parties may mistake course and distance, and even when a survey is made, a mistake in either of the two calls for course and for distance may occur; but it is hardly to be supposed that the parties will err as to the true location of a natural object. The only question, in such a case, which remains for determination, is as to which object is the one intended to be described, when there are two or more, which the parties contend and there is evidence to show, answering to the call or description; and this is the very point we must now decide. Does not the same general rule prevail as in the case we have first stated? The preference, it seems to us, must be given to that object which more clearly and, therefore, the more surely fits the description. It must be, and such is the law, that where there is an ambiguity in the calls of a deed, the judge must guide the jury by such instructions as will enable them to locate the line in dispute according to the established rules of law, but it is not the less the duty of the judge to instruct the jury as to what is the boundary, and where it is, when the facts are undisputed and the parties concede that its location is to be fixed by a legal construction of the deed. If the case is thus considered, we are led to the conclusion that the question should have been submitted to the jury as to which ditch was intended by the parties to the deed, finding that intention by fitting the description in the deed to the object called for. The determination of what boundary was intended is one of construction, dependent upon the terms of the entry, patent, conveyance, or

other instrument, its identity being a question of fact for the jury to decide. The principle thus established finds a simple illustration in this case. The call is for the beginning corner "at the head of a ditch on the road," admitted to be at the point indicated on the map by the figure 1, and thence "running with said ditch in an eastern direction to a branch." The words "ditch" or "drain" have no technical or exact meaning. They both may mean a hollow or open space in the ground, natural or· artificial, where water is collected or passes off. *Goldthwaite v. Bridgewater,* 71 Mass. (5 Gray), 61, and, if sufficiently defined, may bound land as other natural objects. *Bradford v. Cressey,* 45 Me., at p. 13. There is but one ditch at the beginning corner, and the first call, "thence running with said ditch," means, by construction of law, that ditch. Both parties concede that the call, so far as it extends from the figure 1, at the beginning, to the figure 2, is a part of the divisional line, but the difficulty in locating the entire line is encountered at the figure 2. The plaintiff says the line should be extended to the figure 18, as there is a ditch from 2 to a point near 18, which runs "in an eastern direction," and there is a branch at or near 18 which, if pursued in accordance with the further call, will go to the lower edge of the swamp and thence due east to the canal; while the defendant says that the ditch from 2 to 19 gives out at that point and is no part of the "lead ditch" from 1 to 2, but is a tributary of that ditch, emptying into it and is very shallow, and that the lower branch, claimed by the plaintiff as the one called for, is small, and in dry weather there is no flowing water in it, and that the branch is not at 18, but a little to the east of it. They further say that the ditch at the beginning corner is a deep one, a leading and main ditch, and the waters of the other ditches flow into it, and that it runs for some distance "in an eastern direction to 2, and thence N. E. to 3 and thence eastwardly to 5 and thence about north to 9, where it enters a large branch which flows from C to 9 (now indicated on the map). This ditch, they say, is in a ravine and receives the natural drainage of the adjoining land, and that if there was no ditch there, the main body of water would find its way through the ravine to the swamp.

The contentions of the respective parties were supported by evidence. It all comes to this: The ditch at the beginning corner is the one called for as the boundary line dividing the two tracts of land. If that ditch extends from 1 to 19 it controls the call, and if it gives out there, the line will be extended "in an eastern direction" to the nearest point on the lower branch; but if the ditch from 2 to 19 is no part of the one at the beginning corner, and the latter ditch runs from 1 to 2 and thence on to the upper branch at 9, as the defendant contends it does, that is the divisional line, and it will be further extended with the upper branch and the call due east to the swamp and canal. It is for the jury to say which is the ditch, as called for in the deeds, and however this fact is ascertained to be, it will control the course.

The court instructed the jury as follows: "What are the boundaries of a tract of land is a question of law; where these boundaries are is a question of fact. Both parties admit that the beginning point is at 1, and the ditch from 1 to 2 constitutes a part of the dividing line in dispute, and if the jury find from the evidence that there was a ditch running from 1 towards 18, it is their duty to go to that point, 18, even though the ditch gave out at 19, and to answer the first issue in favor of the plaintiffs; that the line contended for by the defendants did not run in an eastern direction and did not answer the call in the deed from M. J. Battle to Mary A. Powell."

The learned judge erred in taking the disputed question from the jury, even though there may be *a* ditch from 2 to 19. That fact, of itself, did not locate the line as matter of law. The question of fact was whether the ditch from 2 to 19 was a part of the ditch at the beginning corner, or did that ditch lead in another direction, that is, from 2 to 3 and thence to 9. The calls for an "eastern direction" was not controlling. The ditch at the beginning corner does run a little north of east for some distance, and the fact that its course is then changed does not necessarily destroy its identity. While its course is a varied one, sometimes east and northeast and even north, its general course bears eastwardly. It will be competent, in locating the ditch, to consider the calls of the deed for an "eastern direc-

tion," with the other facts, namely, that the lower ditch ends at 19, that it is a small ditch emptying into the other ditch at 2, that the latter ditch is larger and better defined and continues from 1 to 2 to 3 and thence to 9, but that it has various courses in different directions, its general trend being eastward, although the course of one line is north or a little west of north. The jury, of course, may consider the other relevant facts and circumstances in their effort to identify the ditch, but which ditch is the one called for is for them to determine and not for the court as a naked proposition of law. We think our conclusion is supported by the authorities.

In *Spruill v. Davenport,* 46 N. C., 203, it is said, quoting from *Tatem v. Paine,* 11 N. C., at p. 71: "What are the termini or boundaries of a grant or deed is matter of law; where those boundaries or termini are is matter of fact. It is the province of the court to declare the first, that of the jury to ascertain the second. Where natural objects are called for as the termini, and course and distance and marked lines are also given, the natural objects are the termini, and the course and distance and marked lines can only be resorted to by the jury to ascertain the natural objects; they act as pointers or guides to the natural objects. When the natural boundary is unique, or has properties peculiar to itself, these pointers or guides can have but little effect—in fact, I believe none. Where there is more than one natural object in the neighborhood answering the description, that is, having common qualities, then those pointers or guides may be adverted to, to ascertain where the object called for is, or which is the object designated. They do not then contradict or controvert natural boundary; they explain a latent ambiguity created by there being more than one object which answers the description. It is completely within Lord Bacon's illustration of the rule as to a latent ambiguity. The judge was, therefore, right in his general observation, that natural boundaries must prevail over artificial. But this is rather a rule of law than of fact; it governs, properly speaking, him and not the jury." *Judge Battle,* who delivered the opinion in *Spruill v. Davenport,* then proceeds to say: "The error in the charge in the present case consisted in

giving an undue effect to the term 'westwardly.' The term 'westwardly,' with nothing to control it, may perhaps mean west or due west, but it is evident that such is not its precise signification, and hence it is readily controlled by circumstances, which goes to show that a due west course could not have been intended. *Brandt v. Ogden,* 1 Johns., 155. Such is the case here. The call is 'westwardly' along the said Spruill's line. Now, Spruill's line thus called for is not a single straight line running due west, but consists of several lines, as appears by the plat, running sometimes a few degrees to the north, and sometimes a few degrees to the south of a due west course." A casual inspection of the map filed in *Spruill v. Davenport* will show that the call "westwardly with Spruill's line" was almost as eccentric in its courses as the one we have in this case.

"A *latent* ambiguity exists when, there being no defect in the description on the face of the instrument, it becomes necessary to fit the description to the thing—in other words, to identify it; and in introducing parol evidence for this purpose, the uncertainty appears." *Deaf and Dumb Inst. v. Norwood,* 45 N. C., 69. The language of a deed applying to more objects than one, evidence may be given of surrounding circumstances to ascertain which object was intended. If the document applies in part, but not with accuracy, to surrounding circumstances, inferences may be drawn from the said circumstances as to the meaning of the document, whether there is more than one or only one thing or person to which or to whom the inaccurate description may apply. Steph. Ev., Art. 91 (7) and (8); *Graybeal v. Powers,* 76 N. C., 66; *Rowe v. Lumber Co.,* 133 N. C., 433 (*s. c.,* 138 N. C., 466); 5 Cyc., p. 870; *Opdyke v. Stephens,* 28 N. J. Law, 83; *Sanborn v. Clough,* 40 N. H., 316; *White v. Bliss,* 62 Mass. (8 Cush.), 510. In *Opdyke v. Stephens, supra,* we find a clear and succinct statement of the law upon this subject: "In settling a question of boundary, when there is a latent ambiguity in the description contained in the deed, or a doubt as to the true location of the lines, evidence *aliunde* is admissible to show where the lines are.

Boundaries may be proved by every kind of evidence admissible to establish any other fact. The question of construction is a question of law to be decided by the court upon the terms of the instrument itself, and where no latent ambiguity exists it must be decided without evidence *aliunde;* but a question of location or the application of a grant to its proper subject-matter is a question of fact to be determined by the jury by the aid of extrinsic evidence."

Two cases decided by this Court afford striking illustrations of the rule in the law of boundary, that when two objects are called for, and there is doubt as to which of them answers the true call, it is for the jury to find upon oral and extrinsic evidence, as between the two or more objects, the one intended by the parties. *Hurley v. Morgan,* 18 N. C., 425; *Becton v. Chesnut,* 20 N. C., 335.

There is a question of evidence in the case. Plaintiff's witness, W. L. Sherrod, was permitted, against defendant's objection, to testify as to a declaration made by M. J. Battle, after he had parted with the land, as to the line, which was to the effect that in conveying the land to his mother, Mary A. Powell, he intended the lower line, which is contended by the plaintiff to be the boundary, that is, from 1 to 19; but in looking at his deed he found it plain that it was not the line. This testimony, if competent as a declaration of a third person, would seem to be in favor of the defendant; but the location of the line is not to be affected by his intention, unless it is expressed in the deed. The calls of the deed as they are, and not as they were intended to be, must govern, for as said by *Judge Ashe* in *Scull v. Pruden,* 92 N. C., 168: "In questions of boundary, what are the boundaries of a tract of land is a question for the court; where are the boundaries is a question for the jury; and in the construction of deeds, the first rule is that the intention of the parties is, if possible, to be supported; and the second rule is, that this intention is to be ascertained by the deed itself, that is, from all the parts of it taken together." If the call is not in the deed, the mere intention to insert it, which failed, can have no weight. A call may not be varied to satisfy an unexpressed intention. *Graybeal v. Powers,* 76 N. C., 66.

If there was a mutual mistake, and not the mistake of one party only, the deed should be reformed; otherwise, it must remain and be construed as it is written.

We were not informed as to what bearing the acreage of the two tracts has upon the question in controversy. Perhaps none, as it was not mentioned. "Ordinarily, the number of acres mentioned in a deed constitutes no .part of the description, especially when there are specifications and localities given by which the land may be located; but in doubtful cases it may have weight, as a circumstance in aid of the description, and in some cases, in the absence of other definite descriptions, may have a controlling effect." *Whitaker v. Cover,* 140 N. C., 280; *Harrell v. Butler,* 92 N. C., 20; *Baxter v. Wilson,* 95 N. C., 137.

His Honor in his charge assumed, as a fact, that the ditch from 1 to 2 and from 2 to 19 were parts of the same ditch and are continuous and identical throughout, whereas that was a question for the jury, as there was a latent ambiguity. A new trial must be awarded for this error.

New trial.