C. H. CUTTS v. S. WORTH (WIRT) CASEY AND WIFE, MARTHA B. CASEY.

(Filed 24 July, 1967.)

**1. Trial § 19—**

Motion to nonsuit presents the question whether the evidence, considered in the light most favorable to plaintiff, is sufficient to be submitted to the jury.

**2. Trial § 21—**

On motion to nonsuit, plaintiff is entitled to every reasonable inference to be drawn from his evidence, resolving all discrepancies and contradictions in his favor.

**3. Trespass to Try Title § 2—**

In an action for the recovery of land and damages for trespass thereon, denial by defendant of plaintiff's title places upon plaintiff the burden of showing title in himself and that the descriptions in his chain of title fitted the land claimed by him, and of showing trespass by defendant.

**4. Boundaries § 8—**

What are the boundaries of a tract of land is a question of law for the court, the location of the boundaries on the ground is a factual question for the jury.

**5. Boundaries § 2—**

A call to a fixed monument is controlling over a conflicting call for course and distance, and an established line of an adjacent tract is a fixed monument within the purview of this rule.

**6. Trespass to Try Title § 4—**

In this action in trespass to try title, the descriptions in plaintiff's chain of title called for a tract fronting the ocean and for the lines of the tracts lying respectively on each side of plaintiff's tract, and plaintiff's evidence tended to support the location of these lines on the ground in accordance with his contentions. *Held:* Nonsuit was improperly entered, notwithstanding that the location of the lines of the contiguous tracts resulted in a distance between such adjacent boundaries greatly in excess of that called for in the descriptions in plaintiff's chain of title.

APPEAL by plaintiff from *Fountain, J.,* October 1966 Session of PENDER.

This action to have original plaintiffs declared the owners of a

certain tract of land and to be put in possession thereof, to recover the sum of $2,000 from defendants, and to permanently enjoin defendants from trespassing upon the premises was instituted in July 1956 by the heirs of Levi Batson, deceased. Plaintiffs alleged that they were the owners in fee simple of a certain described tract of land in Topsail Township, Pender County, North Carolina; that the defendants had wrongfully trespassed upon the land and were continuing to trespass thereon; that the defendants claimed an adverse interest in the land; that the claim was invalid but that it constituted a cloud on plainiffs' title; that plaintiffs had been damaged $2,000 by defendants' trespass; and that unless defendants were permanently enjoined from trespassing on the land, plaintiffs would suffer irreparable damage for which they had no adequate remedy at law.

Defendants answered, asking that plaintiffs be held to strict proof of their allegation of ownership of the certain described tract of land; admitting that defendants were constructing a building on certain land claimed by themselves; and alleging that defendants are the owners of the land on which they were building. Further answering, defendants allege that they are the owners of a certain described tract of land in Topsail Township, Pender County, North Carolina (this tract overlaps the northeast corner of the tract described in plaintiffs' complaint); that they were in the process of erecting a building thereon and because of the injunction have been damaged in the amount of $1,000; that unless plaintiffs are permanently enjoined from trespassing upon defendants' land they will suffer irreparable damages; that defendants or those under whom they claim have possessed the property claimed by plaintiffs, under known and visible lines and boundaries adversely to all other persons for more than twenty years next preceding the commencement of the action; and that defendants or those under whom they claim have possessed the land under colorable title for more than seven years next preceding the commencement of the action. Defendants prayed judgment that they be declared owners of and be put in possession of the tract of land described in their answer; that they recover the sum of $1,000 from plaintiffs; and that plaintiffs be permanently enjoined from trespassing upon defendants' land.

On 25 September 1956 the court ordered a survey.

At the November 1964 session of Pender County Superior Court the presiding judge ordered that C. H. Cutts be substituted as party plaintiff because original plaintiffs had conveyed the land to him, making him the real party in interest. Plaintiff Cutts then filed a complaint alleging that he had acquired all right, title and interest in and to the land described in the original complaint, and adopting every allegation of the original complaint except the allegation of

ownership of the land. His prayer for judgment was similar to that contained in the original complaint except that it asked that the restraining order theretofore entered be made permanent.

Defendants answered denying plaintiff's acquisition of right, title and interest in and to the land in controversy, renewing all of the allegations of their original answer, and renewing the prayer for judgment contained therein.

On 7 September 1965 the presiding judge ordered a compulsory reference. Both parties objected and excepted to the order and demanded a jury trial.

The referee held a hearing at which he approved stipulations of the parties, took the testimony of witnesses, accepted exhibits, and heard arguments of counsel. He filed his report containing findings of fact, conclusions of law, and decision in favor of defendants.

Plaintiff filed exception to the referee's report, submitted proposed findings, tendered issues and demanded jury trial on all issues. The cause was heard before Judge Fountain and a jury at the October 1966 session. At the conclusion of the plaintiff's evidence the defendants' motion for judgment of nonsuit was allowed and the court in its discretion withdrew a juror and declared a mistrial as to the cross-action filed by the defendants. Plaintiff appeals from the judgment entered.

*Wyatt E. Blake and George Rountree, Jr., for plaintiff appellant.*
*Corbett & Fisler by Leon H. Corbett for defendant appellees.*

PARKER, C.J.　A motion to nonsuit presents the question whether the evidence considered in the light most favorable to plaintiff is sufficient to be submitted to the jury. *Walker v. Story,* 256 N.C. 453, 124 S.E. 2d 113. Discrepancies and contradictions in plaintiff's evidence are for the jury, not the court. *Clinard v. Trust Co.,* 264 N.C. 247, 141 S.E. 2d 271. Plaintiff is entitled to every reasonable inference to be drawn from his evidence. *Pinyan v. Settle,* 263 N.C. 578, 139 S.E. 2d 863. In an action for the recovery of land and for trespass thereon a denial by defendant of plaintiff's title places upon plaintiff the burden of proving title in himself and the trespass of defendant. *Day v. Godwin,* 258 N.C. 465, 128 S.E. 2d 814; *Tripp v. Keais,* 255 N.C. 404, 121 S.E. 2d 596; *Andrews v. Bruton,* 242 N.C. 93, 86 S.E. 2d 786; *Powell v. Mills,* 237 N.C. 582, 75 S.E. 2d 759. Where title to land is in dispute, claimant must show that the area claimed lies within the area described in each conveyance in his chain of title and he must fit the description contained in his deed to the land claimed. *Day v. Godwin, supra; Paper Co. v. Jacobs,* 258 N.C. 439, 128 S.E. 2d 818. The determination of what the bound-

aries are is a question of law for the court. The location of the boundaries on the ground is a factual question for the jury. *Batson v. Bell*, 249 N.C. 718, 107 S.E. 2d 562; *Moore v. Whitley*, 234 N.C. 150, 66 S.E. 2d 785.

Rodman, J., said in *Batson v. Bell, supra:*

"The location of the boundaries of a parcel of land should be determined by following the directions and in the sequence given in the conveyance to each designated corner. If a particular corner is unknown and cannot be determined by adhering to the directions in the sequence specified, it is permissible to go to a subsequent known or established corner and by reversing the direction fix the location of the unknown corner. This back-tracking is permissible only because it permits the location of an otherwise unknown corner."

The fifth headnote in our Reports correctly summarizes the decision in that case:

"Plaintiffs introduced in evidence their grant which called for the northern line of the 'William B. Sidbury' grant as its southern boundary, and introduced evidence tending to locate the northern line of the 'William B. Sidbury grant.' *Held:* Plaintiffs had introduced evidence sufficient to permit the jury to find the northern line of that grant as their southern boundary, notwithstanding that this boundary would almost double the north-south line as called for in plaintiffs' grant and notwithstanding the absence of testimony that the William B. Sidbury line located by the witnesses was the same line called for in their grant, there being no evidence that the line was not in fact the line referred to in their grant."

The parties stipulated that plaintiff and defendants claim title to the property in dispute from a common source, Jesse W. Batson. Plaintiff introduced in evidence copy of land grant #1696 issued to Jesse W. Batson on 20 April 1859. This grant contained the following description:

"Beginning at a stake, William B. Sidbury's corner on the sound; running thence with said Sidbury's line across the banks South twenty-five East sixty-six poles to a stake at the edge of the Ocean, thence with the edge of the ocean North fifty-three, East one hundred and seven poles to Frederick Rhue's line; thence with Rhue's line North twenty-five, West eighty-eight poles to a crooked creek, thence with the meanders of said creek to the Beginning."

The Batson grant is located by reference to the Sidbury and Rhue lines. The Sidbury grant, a copy of which was also introduced in evidence by plaintiff, is for the following described land:

> "Beginning on a dead cedar at the East end of a hammock near Cockle Creek Pond, thence South twenty-three East fifty poles to a stake, thence South fifty, West two hundred and sixty poles to a stake between the Hammock and the Atlantic, thence North twenty-three West one hundred and sixty poles to a stake in the Sound, thence to the Beginning."

The Sidbury grant was dated 4 January 1845. Plaintiff also introduced in evidence copy of a grant to Frederick Rhue dated 18 November 1854 containing the following description:

> "Beginning at a stake at Cockle or Crooked Creek landing on the sound side, then south thirty-five east ninety two poles to the Ocean, then along the ocean North Fifty East two hundred poles to a stake in the ocean, then North thirty five West ninety two poles to a stake in the sound side, then with the sound to the Beginning."

These three grants relate to land on Topsail Island. The Batson grant is located between the Sidbury grant to the southwest and the Rhue grant to the northeast. The southwestern boundary of the Rhue grant is stipulated by the parties and is agreed to as the northeastern boundary of the Batson grant. The southwestern boundary of the Batson grant is the same as the northeastern boundary of the Sidbury grant. The location of this boundary is one point of contention.

On 1 August 1879 J. W. Batson and his wife executed a deed to Milly Bishop conveying a portion of his land described as follows:

> "Beginning at a stake Vashti Atkinson's corner in the Sound running thence with said Vashti Atkinson's line across the banks south twenty five East sixty six poles to a stake at the edge of the ocean, thence with the edge of the ocean, north fifty three East fifty three poles to a stake, thence North twenty five west eighty eight poles to the sound, thence with the meanders of the sound back to the Beginning."

Defendants' claim is based upon a deed from the heirs of Milly Bishop conveying a portion of this tract. The location of this tract is in dispute.

On 21 January 1956 summons was issued in a Petition to divide the lands of Jesse W. Batson, deceased. The Petition sought a division of the land described in the original Batson grant except for

the portion conveyed to Milly Bishop. In the course of this special proceeding the remainder of the Batson grant was divided into twelve lots beginning with number one at the southwestern boundary of the Rhue grant. These lots were assigned to the heirs of Jesse W. Batson and to one S. G. Blake who had acquired an interest in the land.

In the course of the above division of lands a map was prepared showing the twelve lots assigned. Lot number three was assigned to the heirs of Levi Batson and subsequently conveyed by these heirs and others to plaintiff. The description in plaintiff's complaint is to lot number three of this division.

As in *Batson v. Bell, supra,* plaintiff offered evidence from which the jury could find the location of the boundary between the Batson and Sidbury grants. Although placement of this boundary at the location supported by plaintiff's evidence will result in making the ocean boundary of the Batson grant more than twice the length called for in the grant in order to reach the Rhue boundary, this will not prevent such placement. Where there is a conflict between course and distance and a fixed monument, the call for the monument will control. An established line of another tract is such a monument. *Batson v. Bell, supra; Coffey v. Greer,* 241 N.C. 744, 86 S.E. 2d 441.

Plaintiff introduced a copy of a document which divided some of the lands contained within the Sidbury grant. This division allotted certain described lands to Amos Atkinson and wife. Plaintiff produced exhibits and testimony of witnesses that the Vashti Atkinson named in the Milly Bishop deed was the daughter of William B. Sidbury and the wife of Amos Atkinson, that the southwestern boundary of the Milly Bishop tract was the northeastern boundary of the Vashti Atkinson division and that the northeastern boundary of the Vashti Atkinson division was the same as the northeastern boundary of the Sidbury grant and consequently the southwestern boundary of the Batson grant. He introduced evidence of the location of the beginning point of the Vashti Atkinson line and of the Sidbury line and consequently of the Batson grant. His evidence tends to locate the southwestern boundary of the Batson grant and to place the Milly Bishop tract in that portion of the Batson grant rather than in the northeastern portion near the Rhue boundary as contended by defendants. If the southwestern boundary of the Batson grant is established, the remaining boundaries are settled. The ocean and the sound form the southeastern and northwestern boundaries, and the Rhue line is stipulated as the northeastern boundary.

Defendants admit in their answer that they were constructing a building on the described tract of land. Therefore, if plaintiff is found

to be the owner of the land in controversy, trespass by defendants is established.

The pleadings, exhibits, and evidence of the plaintiff provide a sufficient basis for the Court to determine the boundaries of the Batson grant and of the land described in subsequent conveyances in plaintiff's chain of title. There is some evidence from which the jury could find that plaintiff acquired the tract of land in controversy through a connected chain of title. Further, there is some evidence from which the jury could locate the boundaries of this disputed tract on the ground and within the original Batson grant. *Paper Co. v. Jacobs, supra; Batson v. Bell, supra.*

Therefore, the judgment of nonsuit is

Reversed.