ELIZABETH ELAINE PARDUE, Plaintiff v. MICHAEL BRINEGAR and Wife, APRIL B. BRINEGAR; FRANCES BRINEGAR, Defendants

No. COA08-1367

(Filed 18 August 2009)

**1. Real Property— quiet title action—location of boundaries on ground—jury question**

The trial court did not err in an action to quiet title by denying plaintiff's motion for directed verdict and submitting the issue of the boundary location to the jury because the location of a boundary on the ground is a factual question for the jury.

**2. Civil Procedure— motion for judgment notwithstanding verdict—prior directed verdict motion**

The trial court did not err in an action to quiet title by denying plaintiff's motion for judgment notwithstanding the verdict because there was more than a scintilla of evidence supporting defendants' claimed location of the boundary line.

Judge STEELMAN dissenting.

Appeal by plaintiff from judgment entered 16 May 2008 by Judge Michael D. Duncan in Wilkes County District Court. Heard in the Court of Appeals 25 March 2009.

*McElwee Firm, PLLC, by John M. Logsdon, for plaintiff.*

*Stone & Christy, P.A., by Bryant D. Webster for defendants.*

ELMORE, Judge.

BACKGROUND

Plaintiff Elizabeth Elaine Pardue owns a tract of land in Wilkes County that adjoins and lies southwest of a tract owned by defendants Michael Brinegar, April Brinegar, and Frances Brinegar (the Brinegars). Pardue commenced a quiet title action on 31 May 2007 in order to determine the true boundary line between Pardue's and the Brinegars' tracts. Both parties claimed ownership of a 0.79 acre disputed zone.

Pardue's chain of title described the boundary with the Brinegars' tract as:

BEGINNING on a white oak in the old S.P. Smith line and runs *up the branch*, South 11 ½ degrees West 32. poles to a maple, at the forks of said branch; then South 62 degrees East up the east prong of said branch 56 poles to a post oak on the east side of the public road.

(Emphasis added.)

The Brinegars' chain of title described the same boundary as:

[From two white oaks in the S.P. Smith line on the west bank of a branch] then South 20 deg. West *up said branch* 32 poles to a maple at the fork of the branch; thence South 60 deg. East up the

left prong 56 poles to a white oak (now down) on the South side of the public road.

(Emphasis added.)

At trial, the parties agreed that the disputed zone should be bound by the white oak in the S.P. Smith line, the maple at the forks of the branch, and the oak on the public road. However, Pardue contended that "up the branch" meant that the boundary between these three markers was following the meandering path of a stream, while the Brinegars contended that the phrase merely indicated the general direction of the boundary and that the boundary therefore followed straight line segments. The nature of the boundary line—a branch or straight line segments—was the primary issue at trial. At the close of all evidence, Pardue moved for a directed verdict, which was denied by the trial court. The trial court then instructed the jury as follows:

Members of the jury, in cases such as this it is a function of the court to determine from the evidence presented a description of the boundary. After I give you the description of the boundary, it is your duty to use this description to locate the true boundary between the lands of the plaintiff and the defendant. I now instruct you that the description of the boundary is as follows:

Beginning on a white oak in the old S.P. Smith line and runs up the branch South 11 ½ degrees West 32 poles to a maple at the forks of said branch; then South 62 degrees East up the east prong of said branch 56 poles to a post oak on the east side of the public road leading from Wilkesboro to Winston-Salem.

The jury determined that the true boundary was as the Brinegars had contended—that is, the boundary consisted of a straight line segment between the white oak and the forks of the branch, and then continued in another straight line segment from the forks of the branch to the post oak. After the jury was dismissed, Pardue moved for judgment notwithstanding the verdict; the motion was denied by the trial court, which then proceeded to enter a judgment in favor of the Brinegars based on the jury's verdict.

Pardue now appeals. For the reasons stated below, we affirm the trial court's judgment.

ARGUMENTS

I.

[1] Pardue's first argument is that the trial court erred by denying her motion for directed verdict and submitting the issue of the boundary location to the jury. We disagree.

Of primary importance here is the question of whether the shape of the boundary was one to be decided by the trial court or by the jury. North Carolina courts have consistently distinguished the role of the jury from the role of the court in matters of boundary location. "The determination of what the boundaries are is a question of law for the court. The *location* of the boundaries *on the ground* is a factual question for the jury." *Cutts v. Casey*, 271 N.C. 165, 167-68, 155 S.E.2d 519, 521 (1967) (emphases added); *see also Brown v. Hodges*, 232 N.C. 537, 541, 61 S.E.2d 603, 606 (1950) ("[W]hat constitutes the dividing line is a question of law for the court, but a controversy as to where the line is must be settled by the jury . . . ."); *Sherrod v. Battle*, 154 N.C. 345, 70 S.E. 834, 837 (1911) ("What are the termini or boundaries of a tract of land, a grant[,] or deed . . . is a matter of law; where these termini are, is a matter of fact.").

In the present case, both parties agreed on the description and location of three markers that outlined the boundary; however, they disagreed on whether the boundary that connected those markers consisted of straight line segments or the meandering path of a creek. Pardue contends that the path of the boundary line goes to *what* constitutes the boundary, and, therefore, is a question of law that should have been determined by the trial court, not the jury. The Brinegars contend that the path of the boundary is a question of fact because the jury's role is to decide where on the ground a boundary line is, and, therefore, the issue was properly submitted to the jury.

In this case, both parties had agreed upon the ground location of only three points on the boundary; the ground locations of all remaining points on the boundary were still in dispute. Using the chains of title, the trial court gave instructions describing what the disputed boundary should be: "Beginning on a white oak in the old S.P. Smith line and runs up the branch." It was the jury's job to use this description to determine where the remaining boundary points were located on the ground. The fact that three singular points out of the entire boundary had been agreed upon does not necessarily mean that the entire boundary's ground location flows therefrom. The trial court

could have properly allowed Pardue's motion for directed verdict only if "the location of th[e] boundary is admitted," or "the location of the declared boundary is uncontroverted by evidence." *Brown*, 232 N.C. at 541, 61 S.E.2d at 606. That is, a directed verdict is appropriate in boundary disputes only when there is no real factual dispute as to the boundary's ground location, meaning that the issue resolves itself into a question of law. In the present case, however, the full ground location of the boundary had not been admitted, and the evidence of its location was precisely what was in dispute. If the trial court had decided the issue of whether the boundary followed a straight line or a meandering line, then the trial court would necessarily have been determining the controverted factual question of the location on the ground of the boundary, which is a duty specifically in the province of the jury. *Cutts*, 271 N.C. at 168-69, 155 S.E.2d at 521. Therefore, the location on the ground of the remaining points of the boundary line was properly for the jury's determination.

The question then becomes whether there was enough evidence for the trial court to deny Pardue's motion for a directed verdict and actually submit it to the jury.

> The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict . . . the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury. Generally, when there is more than a scintilla of evidence to support the non-movant's claim or defense, a motion for directed verdict . . . should be denied.

*N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 362, 649 S.E.2d 14, 19-20 (2007) (citations omitted). As such, this Court will affirm the trial court's denial of Pardue's motion for a directed verdict and subsequent submission of the issue to the jury so long as there is at least a scintilla of evidence to support the Brinegars' claim that the true boundary location followed a straight line rather than the meanderings of a stream.

Pardue had no objection to the Brinegars presenting John Steven Steele as an expert in the field of land surveying. Steele testified as to two primary reasons why he believed that the boundary was comprised of straight line segments rather than a meandering line follow-

ing the stream. First, Steele testified that straight line segments would have matched the distances stated on both parties' chains of title to within forty feet; however, if the boundary were meandering, then the distances in the chains of title would have been off by 140 feet. As such, the measurements from the original deeds more closely matched a straight line boundary than a meandering boundary. Second, he testified that the language "up the branch" was not typically used to indicate following the meanderings of a stream. "Normally it would say something like: Thence with the meanders of the stream or branch." In fact, the chains of title did use the term "meanders" in describing the boundary's course along a road, further implying to Steele that, if the original deed had meant for another portion of the boundary to follow a stream, then the deed would have used the term "meanders" in that instance as well. Steele testified that "up the branch" was a term indicating "a general direction" that the boundary followed along a given bearing.

Based upon these reasons, Steele concluded that "rather than going exactly with the branch" of the stream, the boundary "went on the straight line, from corner to corner. The branch was not the boundary line." This expert witness, along with the deeds and maps that he referenced, constitute more than a scintilla of evidence supporting the Brinegars' claimed location of the boundary line.

Pardue cites numerous cases from as far back as 1795 that address the issue of deed construction and how straight lines—as opposed to meanderings—were indicated on deeds. Pardue cites *Board of Transportation v. Pelletier*, 38 N.C. App. 533, 248 S.E.2d 413 (1978), which states: "In construing a deed description it is the function of the court to determine the true intent of the parties as embodied in the entire instrument. The intention of the parties as apparent in a deed should generally control in determining the property conveyed thereby." *Id.* at 536-37, 248 S.E.2d at 415. Pardue claims that *Pelletier* requires the trial court to determine whether the parties in the deed intended the boundary to run as a straight line or as a meandering line. However, the trial court in the present case fulfilled its job by determining that both parties meant the boundary to run "up the branch" of the stream. There was no dispute about whether this language was describing the parties' intent; the dispute was about where this language would dictate the boundary to fall on the ground—which is a question for the jury. If Pardue's literal construction of *Pelletier* is correct, then there would rarely be an issue to submit to the jury because the parties' intent as to the location of the

boundary would be decided by the trial court, and, therefore, there would no longer be any factual dispute for the jury.

Pardue heavily relies on *Tallahassee Power Co. v. Savage*, 170 N.C. 625, 87 S.E. 629 (1916), in support of her argument that "up the branch" should be read as "meandering with the branch." However, *Tallahassee* states that "[i]t is a leading rule in the construction of all instruments that effect should be given to every part thereof; and, in expounding the descriptions in a deed or grant . . . they ought all to be reconciled if possible, and as far as possible." *Id.* at 711, 87 S.E. at 631. In the present case, the original deeds listed distances between the agreed-upon points that fit considerably closer if the boundary consists of straight line segments rather than a meandering path; also, the deeds used the word "meanderings" in the context of a road but not in the context of this stream. If we follow *Tallahassee*'s language that effect should be given to every part of an instrument if at all possible, then the uncontroverted distances on the original deed instruments and the selective usage of the word "meanderings" only add to the Brinegars' argument that the original instruments called for a straight line boundary when they used the phrases "up the branch" and "up said branch." As Pardue herself concedes, "if the intent is not apparent from the deed[,] resort may be had to the general rules of construction." *Pelletier*, 38 N.C. App. at 536, 248 S.E.2d at 415. Since there is evidence from the original deeds that the boundary was intended to consist of straight line segments, then there is no need to resort to general rules of construction that Pardue also cites at length.

If the trial court had followed Pardue's argument and allowed a directed verdict on this topic, the trial court would have committed error by usurping the jury's role of settling a disputed factual question that determined the ground location of the boundary. Therefore, the proper question before this Court is whether there was more than a scintilla of evidence to support a finding by a jury on a topic that was properly before it. We hold that there was more than a scintilla of evidence supporting the Brinegars' contended boundary location, and, therefore, the trial court properly denied Pardue's motion for directed verdict. Accordingly, Pardue's argument fails.

II.

[2] Pardue next argues that the trial court also erred by denying her motion for judgment notwithstanding the verdict. Again, we disagree.

"Where the motion for judgment notwithstanding the verdict is a motion that judgment ,be entered in accordance with the movant's earlier motion for directed verdict, this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions." *N.C. Indus. Capital, LLC*, 185 N.C. App. at 362, 649 S.E.2d at 20 (2007) (citation omitted).

Therefore, the same arguments in Section II, *supra*, that affirmed that the trial court did not err by denying Pardue's motion for a directed verdict and then submitting the issue to the jury are the same arguments that will affirm the trial court's denial of Pardue's motion for judgment notwithstanding the verdict. There was more than a scintilla of evidence supporting the Brinegars' claimed location of the boundary line, and, therefore, it would have been improper for the trial court to have taken this issue out of the jury's hands by directing a verdict or a judgment notwithstanding the verdict in favor of Pardue. As such, Pardue's argument fails.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

Judge BRYANT concurs.

Judge STEELMAN dissents by separate opinion.

STEELMAN, Judge, dissenting

I respectfully dissent from the majority's analysis affirming the trial court's denial of plaintiff's motion for directed verdict at the close of all of the evidence, and the denial of plaintiff's motion for judgment notwithstanding the verdict after the trial.

A deed is to be construed by the court and not by the jury. *Wal-Mart Stores, Inc. v. Ingles Mkts., Inc.*, 158 N.C. App. 414, 417, 581 S.E.2d 111, 114 (2003) (quoting *Elliott v. Cox*, 100 N.C. 536, 538, 397 S.E.2d 319, 320 (1990)). " 'The language of the deed being clear and unequivocal, it must be given effect according to its terms, and we may not speculate that the grantor intended otherwise.' " *County of Moore v. Humane Soc'y of Moore Cty., Inc.*, 157 N.C. App. 293, 298, 578 S.E.2d 682, 685 (2003) (quoting *Southern Furniture Co. v. Dep't of Transp.*, 133 N.C. App. 400, 403, 516 S.E.2d 383, 386 (1999)). Ordinary terms contained in a deed must be given their plain meaning. *Id.*

PARDUE v. BRINEGAR

[199 N.C. App. 210 (2009)]

The language of the deeds in the chain of title for both the property of plaintiff and defendants states the boundary line runs "up the branch," and not in two straight lines between the three undisputed markers.[1] The terms must be given effect according to their plain meaning, and the grantors intended for the branch or stream to be the dividing line between the two properties. " 'The Court considers it settled upon authority that up the river is the same as along the river, unless there be something else beside course and distance to control it.' " *Tallassee Power Company v. C.W. Savage et al.*, 170 N.C. 625, 630, 87 S.E. 629, 631 (1916) (citation omitted). According to the express language contained in the deed, the grantors intended for the boundary line to run along the branch.

The grantors' description of the branch as the boundary controls over the distances mentioned in the deed. In the cases cited by the majority, the call for a permanent natural monument controls the boundary, rather than any distance contained in the deed. *Cutts v. Casey*, 271 N.C. 165, 170, 155 S.E.2d 519, 522 (1967); *Brown v. Hodges*, 232 N.C. 537, 541, 61 S.E.2d 603, 606 (1950). The boundary begins at "a white oak . . . and runs up the branch . . . to a maple, at the forks of said branch." Then, from the maple "up the east prong of said branch . . . to a post oak." The branch is a permanent natural monument, which the grantors described in the deeds. This description unequivocally established the branch as the natural boundary between the two properties.

The majority holds that a factual dispute as to the location of the boundary lines existed for the jury to decide. However, there is no latent ambiguity that required the jury to determine which branch on the property the grantor intended to describe in the deed. *See Sherrod v. Battle*, 154 N.C. 345, 349-50, 70 S.E. 834, 836 (1911). The only issue in this case is what constituted the boundary lines described as running "up the branch." The determination was a matter of law for the court, not the jury.

I would hold the boundary line in dispute followed the path of the stream according to the express language contained in the deeds of both parties. The trial court should have granted plaintiff's motion for directed verdict at the close of all the evidence, and should not have submitted the case to the jury. The judgment of the trial court should be reversed, and the case remanded to the District Court of Wilkes County for entry of judgment in favor of plaintiff.

1. A copy of a plat showing the location of the branch and the disputed properties is attached to this dissent.