BURTON W. HUTCHINSON and wife, LUCILLE HUTCHINSON, Plaintiffs-Appellees.
v.
HOWARD B. FENDER and wife, MARY C. FENDER, Defendants-Appellants.
No. COA09-156
Court of Appeals of North Carolina
Filed December 22, 2009
This case not for publication
Stone & Christy, P.A., by James M. Ellis, for Plaintiffs-Appellees.
The Sutton Firm, P.A., by April Burt Sutton, for Defendants-Appellants.
McGEE, Judge.
Plaintiffs purchased a large tract of real property in Buncombe County by deed dated 21 September 1972. Plaintiffs' deed was recorded on 29 March 1973, and described the tract as comprising 64 acres. The description of the tract was in relevant respects the same as the descriptions in prior deeds transferring the tract at least as far back as 1925.
In March of 1980, Defendants purchased a tract of real property from Plaintiffs' neighbors, the Ducketts, whose 180 acre tract adjoined Plaintiffs' property. The Ducketts' chain of title dates back to at least 1919, when a larger tract of real property was partitioned. The deed transferring a portion of the Ducketts' 180 acre tract to Defendants showed that Defendants acquired a 12.49 acre tract. Defendants' tract adjoined Plaintiffs' property.
Plaintiffs decided to list their real property for sale in 2006, and they commissioned a survey of the property for that purpose. The survey indicated that Plaintiffs' tract comprised only 47 acres, not the 64 acres indicated in Plaintiffs' deed. Plaintiffs' realtor contacted another surveyor, Kenneth T. Mills (Mills), to conduct a second survey in an attempt to determine why there was a discrepancy between the acreage indicated in Plaintiffs' deed and that indicated by the first survey. Mills prepared a second survey and determined that Plaintiffs' tract actually comprised 67.5 acres. Mills determined that 4.5 acres of Plaintiffs' real property were located within the 12.49 acres Defendants purportedly purchased from the Ducketts. Plaintiffs filed this action on 22 November 2006 to, inter alia, quiet title to the 4.5 acres claimed by both Plaintiffs and Defendants. Defendants hired their own surveyor, who determined that none of the real property purportedly conveyed to Defendants by the Ducketts encroached on Plaintiffs' land.
This matter was tried by a jury on July 1-3 and 7, 2008. Defendants moved for a directed verdict at the close of Plaintiffs' evidence and at the close of all the evidence. Defendants' motions were denied. The jury determined Plaintiffs' title to the 4.5 acres was superior to Defendants' title. Defendants filed motions for a new trial and for judgment notwithstanding the verdict on 21 July 2008. The trial court denied Defendants' motions by order filed 6 November 2008. Defendants appeal.

I.
In Defendants' first argument, they contend that the trial court erred "because [] Plaintiffs failed to prove their title was superior to Defendants', [and therefore] the court's denial of Defendants' motions for directed verdict and for judgment notwithstanding the verdict was clear error." We disagree.
First, as Defendants acknowledge:
The standard for appellate review of a trial court's decision on a motion for directed verdict is the same as the standard of review for a judgment notwithstanding the verdict (JNOV). A motion for a directed verdict or a JNOV must be granted if the evidence when taken in the light most favorable to the non-movant is insufficient as a matter of law to support a verdict in favor of the non-movant. The evidence is sufficient to withstand either motion if there is more than a scintilla of evidence supporting each element of the non-movant's case.
Poore v. Swan Quarter Farms, Inc., 94 N.C. App. 530, 532-33, 380 S.E.2d 577, 578 (1989) (internal citations omitted).
All conflicts in the evidence must be resolved in the plaintiff's favor, and he must be given the benefit of every reasonable inference that can be drawn in his favor. Only where the evidence is insufficient to support a verdict in the plaintiff's favor should the defendant's motion be granted.
McNamara v. Wilmington Mall Realty Corp., 121 N.C. App. 400, 404, 466 S.E.2d 324, 327 (1996) (citations omitted). Therefore, resolving "all conflicts in the evidence . . . in . . . [P]laintiffs'] favor," Plaintiffs' "failure to prove" they held superior title could not have been an appropriate basis for the trial court to grant Defendants' motions, because the only relevant issue was whether Plaintiffs presented more than a scintilla of evidence to support their claim to superior title.
Where title to land is in dispute, the "claimant must show that the area claimed lies within the area described in each conveyance in his chain of title and he must fit the description contained in his deed to the land claimed."
Cartin v. Harrison, 151 N.C. App. 697, 701, 567 S.E.2d 174, 177 (2002).
In the present case both Plaintiffs and Defendants presented evidence from surveyors who testified as expert witnesses. Mills, testifying for Plaintiffs, stated:
When a surveyor does a retractment survey he's responsible to go back to the original survey or to follow in the footsteps of the original survey to try to, based on physical evidence and, of course, documentary evidence which is in the deeds, place the property on the ground as close to the location according to the deeds as he possibly can.
Mills further testified that he followed this procedure "the absolute best I could" in light of the complexity of the survey. Mills testified that he contacted other surveyors who had worked in the area to obtain whatever information they might have concerning the area in question. He researched all the prior deeds conveying the tract (or portions thereof), and the prior deeds to the surrounding properties, including the deeds related to Defendants' property. Once Mills obtained "all of the deeds [he . . . entered] the deed description[s] in the computer and it create[d] a whole bunch of pieces that [Mills] fit together like a jigsaw puzzle." Mills
put in the bearings and distances along each line, but also what is along the line, what's called for at the corners, if it's a stake or a tree, and [had] all of that data together in one place, and from that [Mills created] a composite map that [he took] out in the field so that [he would] have all that data in the deed readily available while [he was] searching on the ground.
Mills testified at great length concerning the prior deeds that conveyed both Plaintiffs' and Defendants' land, and the discrepancies he found. Mills found inaccuracies with the bearings (or directions) of the common border between Plaintiffs' and Defendants' tracts indicated by the deeds conveying those tracts. Mills testified that the tract descriptions in neither Plaintiffs' deed nor the Ducketts' deed "closed." This meant that when Mills followed the deed descriptions while surveying on the ground, there were gaps unaccounted for in the deed descriptions on both Plaintiffs' and the Ducketts' property. Mills stated that failure to close on deeds as old as Plaintiffs' and the Ducketts' was not uncommon, considering the outdated technology used when the tracts were first surveyed in the late 1800's to the early 1900's. Mills testified that, in his opinion, the surveyor who conducted the survey for Defendants did not properly connect the Defendants' tract, which was partitioned from the Ducketts' property, to "any physical corners or fences or references[.]"
Mills opined on additional reasons why he believed the survey of Defendants' tract improperly encroached on Plaintiffs' property. Due to the imprecise nature of the deeds Mills was working with, he stated:
The surveyor has to look at the deed itself, each line or call in the deed, and the physical evidence on the ground as well as what the courts have decided in the past surveyors should follow to make a decision as to where the boundary line should be. And a lot of times that's extremely difficult.
Mills testified that there was a hierarchy set by North Carolina appellate court opinions that dictate the importance surveyors should place on particular evidence in making their determinations.
The first and most important is following in the footsteps of the original surveyor. If you find the original marks, original corners marked "trees on a line," they'll control the location of the boundary. The next are natural monuments. Those are trees, large boulders, creeks, rivers, and in some cases roads. The next are artificial monuments. They would be considered markers set by land surveyors. Even a surveyor in the 1800's would place something in the ground.. . . After that comes the bearings in the description because the courts theorize that the instrument operator was much more accurate than measuring of the distances. The next is the distance in hierarchy. The main reason that was there in that position is a lot of court decisions are very old. The surveyors used a link chain for measuring distances. A link chain is sixty-six feet long and was very difficult to measure accurately with. The final in the hierarchy is area.
Mills testified he followed these rules, and "did . . . the absolute best I could to find physical evidence. That's up near the top following in the original surveyor's footsteps[.]" Mills stated that when he could not locate physical evidence, he went down the established hierarchy to make his determinations. Though it was a difficult task, Mills believed there was sufficient evidence for him to make an accurate determination of the boundaries of Plaintiffs' tract, and to locate those boundaries on the ground. In Mills' professional opinion, the survey of Defendants' tract encroached on Plaintiffs' property.
Mills' testimony indicated that he spent considerable time and effort on the ground locating, and attempting to locate, natural monuments and artificial monuments related to the boundaries of the disputed tracts. He testified that he appropriately considered these natural and artificial monuments in making his determination of the disputed boundary. Mills' testimony was thorough in its detail of how he made his decisions and determinations in ultimately reconciling the conflicting deed evidence and the evidence he discovered while conducting his on-site survey.
Defendants presented evidence from their surveyor, who disagreed with Mills' determinations. Defendants' surveyor believed the disputed boundary encroached on Defendants' property.
Defendants argue that the testimony of Mills indicated his methods violated both the Real Property Marketable Title Act (the Act), N.C. Gen. Stat. § 47B-1, et seq., and the "established case law relating to quiet title actions[.]" Defendants argue that the "significance of the Act as it relates to this case is the potential for its evisceration caused by one surveyor who capriciously dismissed the relevance of established public record." Both Plaintiffs' and Defendants' evidence presented at trial was disputed. Defendants attempt to discredit Mills' testimony by arguing that it "was wrought with empty assertions" and "hypotheticals." Defendants claim Mills disregarded the established hierarchy of rules for deed construction. Even assuming arguendo that Mills' testimony did contain "empty assertions" and hypotheticals, that is not a proper basis upon which to dismiss Plaintiffs' claim. The jury was presented with Mills' testimony concerning his application of the established hierarchy of rules for deed construction, and with Defendants' evidence and arguments challenging Mills' methods.
In Pardue v. Brinegar, __ N.C. App. __, 681 S.E.2d 435 (2009), this Court stated:
[A] directed verdict is appropriate in boundary disputes only when there is no real factual dispute as to the boundary's ground location, meaning that the issue resolves itself into a question of law. In the present case, however, the full ground location of the boundary had not been admitted, and the evidence of its location was precisely what was in dispute. If the trial court had decided the issue of whether the boundary followed a straight line or a meandering line, then the trial court would necessarily have been determining the controverted factual question of the location on the ground of the boundary, which is a duty specifically in the province of the jury.
Id. at __, 681 S.E.2d at 438.
We hold that there was more than a scintilla of evidence presented at trial in support of Plaintiffs' claim, and the trial court did not err in denying Defendants' motions for a directed verdict and judgment notwithstanding the verdict. Poore, 94 N.C. App. at 533, 380 S.E.2d at 578. It was the province of the jury to make determinations of fact and credibility involving the evidence and testimony concerning the location of the disputed boundary line on the ground. Brinegar, __ N.C. App. at __, 681 S.E.2d at 438.

II.
In Defendants' second argument, they contend that the trial court erred in "denying [Defendants'] motion for a new trial because the jury verdict was compromised by confusion and manifest disregard of the court's instructions." We disagree.
It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.
Worthington v. Bynum, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982) (citations omitted). A "`manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing the heavy burden of proof.'" In re Will of Buck, 350 N.C. 621, 629, 516 S.E.2d 858, 863 (1999) (citation omitted).
While the necessity for exercising this discretion, in any given case, is not to be determined by the mere inclination of the judge, but by a sound and enlightened judgment in an effort to attain the end of all law, namely, the doing of even and exact justice, we will yet not supervise it, except, perhaps, in extreme circumstances, not at all likely to arise; and it is therefore practically unlimited.
Worthington, 305 N.C. at 482, 290 S.E.2d at 602-03, quoting Settee v. Electric Ry., 170 N.C. 365, 367, 86 S.E. 1050, 1051 (1915). This is because "an appellate court . . ., unlike the trial court, does not have the opportunity to observe the trial firsthand and is at a distinct disadvantage in attempting to measure the weight and credibility of the evidence introduced at trial." Buck, 350 N.C. at 628, 516 S.E.2d at 863.
Defendants first contend that the facts of the trial were too complicated for the jury to understand, and thus the jury could not reach a reasoned verdict. Though the trial court (outside the presence of the jury) expressed its opinion at the end of the first day of trial that it was "confused" by the evidence presented at that point, it later expressed (again outside the presence of the jury) that it understood what the case was about. The jury was deadlocked in its deliberations, evincing the complicated nature of the facts involved, but was instructed by the trial court to return and attempt to reach a verdict, which the jury did, finding in favor of Plaintiffs. The trial court was in a better position to determine whether the facts of the case were too confusing for the jury to reach a fair verdict than is this Court. We decline to find a manifest abuse of discretion on the part of the trial court based upon its determination. Id.

III.
Defendants next argue that there was jury confusion concerning an exhibit. The jury asked the trial court during deliberations if Plaintiffs' Exhibit 10 was "an accurate representation of [Plaintiffs'] deed description." The trial court and the attorneys for both Plaintiffs and Defendants all apparently believed this question was directed to a sketch of the Ducketts' tract included in a deed executed prior to the Ducketts' purchase of the tract. Defendants argue that Plaintiffs' Exhibit 10 was in fact the composite map made by Mills to assist him while he conducted his on-site survey and investigation.
The trial court instructed the jury that the trial court's memory was "that the [description of Plaintiffs' tract] is not depicted on that map at all . . . that it was the Duckett deed that came down through that description. But you must take your own memories of what the evidence was." Defendants did not object to this instruction and have thus failed to preserve this issue for appeal. N.C.R. App. P. 10(b)(1); Setzer v. Boise Cascade Corp., 123 N.C. App. 441, 445, 473 S.E.2d 431, 433 (1996).
Further, Defendants' fail to make any compelling argument concerning how the trial court's instruction prejudiced them in any way. First, the trial court instructed the jury that it must rely on its own memory of the facts in its deliberations. Second, the trial court's discussion of its memory of the exhibit, if considered by the jury, was that the exhibit was a "sketch" and therefore not an accurate legal representation. Plaintiffs' Exhibit 10 was introduced for illustrative purposes only. Therefore, if the jury was influenced by the trial court's instruction, it would not have considered the exhibit as evidence. Because Plaintiffs' Exhibit 10 was introduced for illustrative purposes only, consideration of that exhibit as evidence, not merely as an exhibit illustrating Mills' testimony, would have been improper. We hold that Defendants have failed in their "heavy burden" of proving the trial court's denial of Defendants' motion for a new trial constituted a manifest abuse of discretion. Buck, 350 N.C. at 629, 516 S.E.2d at 863.
No error.
Judges STEELMAN and JACKSON concur.
Report per Rule 30(e).