IN THE SUPREME COURT OF NORTH CAROLINA

No. 325PA18

Filed 6 December 2019

ALBERT S. DAUGHTRIDGE, JR. and MARY MARGRET HOLLOMAN
DAUGHTRIDGE

v.

TANAGER LAND, LLC

On discretionary review pursuant to N.C.G.S. § 7A-31 of a divided, unpublished decision of the Court of Appeals, No. COA17-554, 2018 WL 3977990 (N.C. Ct. App. August 21, 2018), that affirmed an order granting summary judgment entered on 30 November 2016 by Judge Beecher R. Gray and a final judgment and assessment of costs entered on 8 February 2017 by Judge Marvin K. Blount, III, both in Superior Court, Halifax County. Heard in the Supreme Court on 13 May 2019 in session in the Halifax County Courthouse in the Town of Halifax pursuant to section 18B.8 of Chapter 57 of the 2017 Session Laws of the State of North Carolina.

*Boxley, Bolton, Garber & Haywood, L.L.P., by Ronald H. Garber, for plaintiff-appellants.*

*Charles S. Rountree, III for defendant-appellee.*

NEWBY, Justice.

This land dispute presents the question of whether a court should decide the intent of the parties as a matter of law when the conveyances only reference lot numbers on a recorded map and where the disputed property line as shown on the

map is ambiguous. Under these circumstances, the intent of the parties concerning the boundary line is a question of fact to be determined by a jury. Because we hold there is a genuine issue of material fact as to the intended boundary, we reverse the decision of the Court of Appeals that affirmed summary judgment and other relief granted by the trial court.[1]

After acquiring a large tract of land in 1916, L.B. Fleming subdivided it into seventeen numbered lots and filed a map, the Best Farm Map ("the map"), in Plat Book 1, Page 32 in the Halifax County Registry, shown in full below.

---

[1] The trial court granted, and the Court of Appeals affirmed, defendant's motion to dismiss plaintiffs' claim and defendant's motion for summary judgment to quiet its title. The trial court declared defendant the lawful owner of the property in question, dismissed plaintiffs' notice of *lis pendens*, declared void plaintiffs' map recorded in Map Book 2016, page 96 (the Stahl survey), and awarded costs to defendant. The analysis herein that identifies a genuine issue of material fact and reverses summary judgment is equally applicable to the dismissal of plaintiffs' claim and other relief granted; thus, our holding reinstates the entire original suit. The orders of the trial court filed 30 November 2016 and 8 February 2017 are reversed.



Eight of the lots have as their eastern boundaries a hypothetical line in White's Mill Pond Run (the mill pond). Only the southern boundary of Lot 8, however, does not have a metes and bounds description to the hypothetical eastern line terminating in the mill pond. Shortly after recording the map, Fleming deeded plaintiffs' predecessor in title Lots 7 and 16 and defendant's predecessor in title Lot 8. The conveyances described the land using lot numbers as being the lots as shown on the recorded map; the respective deeds do not include metes and bounds descriptions. The map shows the dividing boundary between Lot 16 and Lot 8 to be along or near the high water line of an inlet of the mill pond. The map shows the mill pond without metes and bounds. Plaintiff alleges the high water line has always been recognized as the boundary, allowing plaintiffs to have water access and a boat ramp.

There was no dispute as to the property line until 2008 when, before acquiring Lot 8, defendant requested a survey. That survey purports to place a sliver of land along the southern shore of the pond inlet within Lot 8. The contested property is land lying between the high water line and the center of an earthen dam, extending along a portion of the shoreline ("the contested property"). Again, only by reference to a recorded map, this time the 2008 map, defendant took ownership of Lot 8,[2] claiming the contested property. After the purchase was completed, defendant installed a gate

---

[2] A 1.19 acre tract was excluded from the conveyance of Lot 8.

and posts on land that plaintiffs believed to be their land, eliminating plaintiffs' access to the mill pond.

On 17 November 2015, plaintiffs filed their complaint in Superior Court, Halifax County, seeking a declaratory judgment and to quiet title, and filed a notice of *lis pendens* with the Register of Deeds on that same day. Plaintiffs filed an amended complaint on 26 February 2016. Plaintiffs' amended complaint described the portion of land at issue and defendant's alleged encroachments upon plaintiffs' land. Plaintiffs sought a declaratory judgment that the disputed land lies within the boundary of Lot 16, that the title be quieted, and that defendant's encroachments be removed. Defendants answered claiming the disputed land to be within its boundary.

On 5 October 2016, defendant moved to dismiss plaintiffs' action to quiet title and enter summary judgment for defendant, to strike the notice of *lis pendens*, and to award defendant costs and attorney fees. Plaintiffs responded to defendant's motion and attached surveys, affidavits, land leases, and depositions. Plaintiffs included an affidavit from surveyor Michael Stahl and an accompanying property line survey dated 20 July 2015. Plaintiffs' evidence tended to show that plaintiffs' boundary line extended to where the land north of the dam touches the high water line of the mill pond on the 1916 map (relevant portion of the map enlarged and shown

below).

Plaintiffs point to the location of the high water line as demarcated by "Water



Oak ●" on the map, a description of the boundary line that provides Lot 16 with water

access. Plaintiffs assert that the "●" as used throughout the recorded map marks a

location in the water while an "○"shows locations on dry land. Plaintiffs' family has

used the disputed portion of the land to fish, boat, and swim for one hundred years

and installed a boat ramp for their use in the 1940s. Plaintiffs claim the contested

property was first and only attributed to defendant's Lot 8 in the survey done for

defendant in 2008. Similarly, defendant supported its interpretation of the boundary

line with affidavits, surveys, and other evidence.

The trial court dismissed plaintiffs' claim and granted summary judgment and other relief for defendant. It concluded "[t]he boundary between the parties' parcels of land in contention . . . is the Dam as depicted on the [1916] map . . . ." The trial court voided a map recorded by plaintiffs, the Stahl survey, because it refuted the placement of the boundary along the dam. Plaintiffs appealed.

On appeal the Court of Appeals observed that, following defendant's purchase of Lot 8, "defendant and plaintiffs both claimed title and ownership" of the contested property. *Daughtridge v. Tanager Land, LLC*, No. COA17-554, slip. op. at 2, 2018 WL 3977990 at *1 (N.C. Ct. App. August 21, 2018) (unpublished). The Court of Appeals admitted "the [1916] map is unclear as to what the boundary is and where the boundary line between their respective lots is located." *Id*. Central to the Court of Appeals' resolution of the dispute was the dam shown on the 1916 map. The Court of Appeals acknowledged the dam does not extend the full distance of the boundary. *Id*. at 4 n.1, 2018 WL 3977990 at *5 n.1 ("This result, which the trial court adopted, carries the centerline of the dam past the point where the dam ends and over a portion of land that is not subject to the same potential rules of construction."). Nevertheless, the Court of Appeals treated the dam, a monument shown on a map, the same way as a monument identified in a deed's legal description. It concluded: "Therefore, because the high water line is unlabeled and the water oak cannot be identified, we hold the dam is a monument that marks the boundary between the lots. This is consistent with the principle that the more permanent monuments control the

-7-

interpretation of boundaries on plats." *Id.* at 11, 2018 WL 3977990 at \*5. Thus, it upheld the trial court's grant of summary judgment for defendant and other relief. *Id.* at 12, 2018 WL 3977990 at \*5.

"This Court reviews appeals from summary judgment de novo." *Ussery v. Branch Banking & Tr.*, 368 N.C. 325, 334–35, 777 S.E.2d 272, 278 (2015) (citation omitted). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2017). "The movant is entitled to summary judgment . . . when only a question of law arises based on undisputed facts." *Ussery*, 368 N.C. at 334, 777 S.E.2d at 278 (citation omitted). "All facts asserted by the [nonmoving] party are taken as true and . . . viewed in the light most favorable to that party." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citations omitted). "A genuine issue of material fact 'is one that can be maintained by substantial evidence.' " *Ussery*, 368 N.C. at 335, 777 S.E.2d at 278 (quoting *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' and means 'more than a scintilla or a permissible inference.' " *Id.* at 335, 777 S.E.2d at 278–79 (quoting *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977)).

Under section 41-10 of our General Statutes, an individual can initiate an action to remove a cloud on title "against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims . . . ."

N.C.G.S. § 41-10 (2017).

> The statutory action to quiet title to realty consists of two essential elements. The first is that the plaintiff must own the land in controversy, or have some estate or interest in it; and the second is that the defendant must assert some claim to such land adverse to the plaintiff's title, estate or interest.

*Wells v. Clayton*, 236 N.C. 102, 107, 72 S.E.2d 16, 20 (1952) (citations omitted). Plaintiff bears the burden of establishing better title. *See Day v. Godwin*, 258 N.C. 465, 469, 128 S.E.2d 814, 816–17 (1963); *Mobley v. Griffin*, 104 N.C. 112, 114, 10 S.E. 142, 142–43 (1889). "Where title to land is in dispute, claimant must show that the area claimed lies within the area described in each conveyance in his chain of title and he must fit the description contained in his deed to the land claimed." *Cutts v. Casey*, 271 N.C. 165, 167, 155 S.E.2d 519, 521 (1967)); *see also Jones v. Percy*, 237 N.C. 239, 242, 74 S.E.2d 700, 702 (1953).

Interpreting a deed is a matter of law for the court. *See Brown v. Hodges*, 232 N.C. 537, 541, 61 S.E.2d 603, 606 (1950). The intent of the parties controls. *See Cox v. McGowan*, 116 N.C. 131, 133, 21 S.E. 108, 109 (1895) (When interpreting a deed, courts discern what the parties intended to convey by placing themselves in the position of the parties at the time of the conveyance.). "*What* are the boundaries is a matter of law to be determined by the court from the description set out in the conveyance. *Where* those boundaries may be located on the ground is a factual question to be resolved by the jury." *Batson v. Bell*, 249 N.C. 718, 719, 107 S.E.2d 562, 563 (1959) (emphasis added).

Here it is undisputed that the grantor intended to grant all of Lot 16 to plaintiffs' predecessor and all of Lot 8 to defendant's predecessor. Thus the meaning of the language of the deeds is not in dispute. What is unclear from the face of the conveyances is what land each conveyance includes. Neither conveyance includes a metes and bounds description for the court to interpret as a matter of law. The chains of title of both plaintiffs and defendant simply use lot numbers and reference a recorded map. If the map were unambiguous then the court could determine the intent of the parties; however, here with reference only to a map, and that map being ambiguous, what the grantor intended the dividing boundary to be between Lots 16 and 8 remains unclear. Under these circumstances, the intent of the parties is a question of fact to be determined by a jury.

The map uses metes and bounds with defined corners for all the landlocked conveyances depicted. For those lots abutting water, it merely indicates the existence of the waterway and the water's approximate location. The map is unclear along the northern boundary of Lot 16. The map precisely locates the common corner of Lots 7, 16, and 8 as an iron pin ("common corner") on the northern edge, not in the centerline, of an old road, White Mill Road. While the map shows the dam, the dam does not extend all the way to this common corner. Thus, defendant's view that the dam is the boundary does not answer the question of what the boundary line is between the common corner and the beginning of the dam. Interpreting the map in the light most favorable to plaintiffs as required by the summary judgment standard, the grantor

could well have intended to make the northern boundary of Lot 16 the high water line, giving water access to Lot 16.

Likewise, the southeastern corner of Lot 8 is unclear. Significantly, all of the lots with a terminus point in the pond have a metes and bounds description from a known point to a point in the pond, except the southern line of Lot 8. The line's metes and bounds description ends at the common corner of Lots 7, 16, and 8. The map itself does not prove the southern boundary of Lot 8 extends eastward beyond the common corner. According to plaintiffs, the boundary of their Lot 16 is the high water line, as illustrated by "Water Oak ●" on the map, marking the northeast corner of Lot 16, where the land meets the water of the mill pond inlet. The map shows defendant's eastern boundary to be in the mill pond, but the southeastern corner is unmarked. It certainly begs the question of why would a grantor remove water access to Lot 16 and give a thin sliver of land along the shoreline to Lot 8.

Since the intent of the parties as shown on the map is ambiguous, a jury issue exists. In interpreting all the forecasted evidence in the light most favorable to the nonmoving party, plaintiffs have established a prima facie case and presented sufficient evidence to withstand a summary judgment motion. As noted by the trial court and the Court of Appeals, defendants have likewise provided sufficient evidence to create a genuine issue of material fact. At trial the parties can present all relevant evidence to establish the intent of the parties regarding ownership of the contested property pursuant to the 1916 map. Because a genuine issue of material fact exists,

the decision of the Court of Appeals affirming the trial court's dismissal of plaintiffs' claim and granting summary judgment and other relief to defendant is reversed. This matter is remanded to the Court of Appeals for further remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.